675 So.2d 689 (1996)
Jay BLUMETTI, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, Appellee.
No. 95-1572.
District Court of Appeal of Florida, Fifth District.
June 21, 1996.
Douglas T. Noah of Dean, Ringers, Morgan & Lawton, Orlando, for Appellant.
William T. Moore, Tallahassee, for Appellee Unemployment Appeals Commission.
W. SHARP, Judge.
Blumetti appeals from the decision of the Unemployment Appeals Commission, which affirmed the referee's denial of unemployment compensation benefits, because of Blumetti's excessive tardiness. After reviewing the referee's findings and the transcript of the hearing which formed the basis for the findings, we disagree that Blumetti's conduct constitutes such gross misconduct that it properly excludes him from receipt of unemployment compensation benefits. Accordingly we reverse.
In order to disqualify a former employee from receipt of unemployment compensation, there must be competent substantial evidence in the record[1] that the employee was guilty of having committed "conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation of disregard of standards of behavior which the employer has the right to expect of his employee." § 443.036(26), Fla. Stat. (1995).
The claimant's action must be more than a mere error in judgment to constitute misconduct. Seger v. Danner Construction *690 Co., Inc., 611 So.2d 82, 83 (Fla. 2d DCA 1992); Lewis at 609; Davis v. Unemployment Appeals Commission, 425 So.2d 198, 199 (Fla. 5th DCA 1983). Conduct which justifies discharge of the employee does not necessarily justify denial of unemployment benefits. Livingston v. Tucker Const. & Engineering, Inc., 656 So.2d 499 (Fla. 2d DCA 1995).
The Commission argues that it is appropriate to consider an employee's entire work history in determining whether misconduct exists. C.F. Industries, Inc. v. Long, 364 So.2d 864 (Fla. 2d DCA 1978). It notes that most of the Florida cases deal with absenteeism, not tardiness. It argues these cases are analogous, and should be treated equally. In fact, research discloses sufficient case law in Florida which determines that excessive tardiness is misconduct.[2] However, the employer in such cases must establish by a preponderance of the evidence that the former employee's tardiness was inexcusable and detrimental to the employer's interest. Tallahassee Housing.
The proof in this case falls short of that requirement. The employer representative (Smith) testified that Blumetti had been terminated because of his tardiness record during June, July and August of 1994. At the end of June, he was late to work by approximately thirty minutes on three successive days, and received a written warning that any further tardiness or infraction of the employer's rules could result in termination. On July 20, Blumetti received an additional written warning because he had left his job without permission. He was thirteen minutes late on August 1st and twenty-five minutes late on August 2nd.[3] The final culminating "last straw" for the employer, Alamo, was August 6th when Blumetti came to work three hours and eleven minutes late.
Blumetti testified he had been late three days in a row in June, and that he realized his job was in jeopardy. He explained those late arrivals, as due to car trouble and traffic. After that time, however, he testified that he had not been late, or if he had, he had called in sick, but had been called to come in and work anyway, and that had been counted wrongfully as a tardiness. His immediate supervisor was not at the hearing to dispute this testimony.
On July 20th, Blumetti testified that he and two of his supervisors came to work on time, but because the company was switching over to a new time clock system, their time cards were not accepted by the clock. His supervisor was upset, and said he was leaving and that Blumetti could go home if he wanted to. Since his supervisor, as well as his immediate boss, both left work at that time, he also did so. That testimony was not disputed by the employer.
The culminating event which caused Blumetti's termination was crucial to establishing wanton or gross misconduct on his part. He testified, as did Smith, that he worked the night shift from 9:30 p.m. to 5:30 a.m., on August 5th. During that shift he was told that he was being switched from the night shift to the morning shift, and that he would be expected to report for work the following morning at 8:00 a.m. Blumetti protested to his supervisor and others in a management position that he could not get back to work at 8:00 a.m. without any sleep, and that it was unfair to ask him to do that.
Because he feared his job was in jeopardy, Blumetti told his supervisor that he would do his best to get back to work as fast as he could. He left the night shift at 5:30 A.M., went home and showered, had breakfast, and took a cat-nap, having set his alarm for 7:30 a.m. He fell asleep about 7:00 a.m., and simply slept through the alarm. When he awoke some three hours later, he presented himself at work as quickly as possible and was suspended for being late. Again, none of this testimony was controverted by the employer's representative.
The referee found that Blumetti left work on July 20th, believing that his boss or supervisor *691 who told him to leave work had the authority to do so. He also found:
On the evening of August 5 and August 6, 1994, the claimant was advised that he was changing shifts and that he would begin working on August 6, 1994 on the 8 a.m. shift. The claimant told his supervisor and the individual in charge of his shift that he would not be able to report to work that soon without any sleep. The claimant attempted to comply when he went home and set his alarm for 7:30 a.m. However, the claimant did not wake up and the claimant ... arrived to work late.... Although the claimant did not have much time to prepare for another shift on that last day of work and although the claimant had but a short time to rest before starting on that shift, nonetheless, the claimant had been warned prior to that date about his lateness to work and had been late at least one other time after his warning.
Had Blumetti been terminated after coming to work a few minutes late, in early August, following his written warnings in June, we would probably affirm this case. However, the two instances which the employer relied upon primarily as justifying Blumetti's termination were first the July 20th date when Blumetti left work, with his immediate supervisor's permission, and believing in good faith he was authorized to do so, and second, his three (plus) hours lateness on August 6th. The demand that Blumetti appear for work at 8:00 a.m., having just completed a night shift during which he worked until 5:30 a.m., leaving him but two and one-half hours in which to sleep, clean up and breakfast, strikes us as an unreasonable request on the part of Alamo. He did the best he could to comply. To be late under these circumstances is not surprising, nor should it be unexpected. We are all mere mortals, not machines.
In our view, neither one of these instances can be categorized as an example of wanton disregard of the employer's interests or a deliberate violation of the employer's rules and standards of behavior. Although we do not question Alamo's right to terminate Blumetti under these circumstances, denial of unemployment compensation benefits necessitates a record and findings of wanton and willful misconduct on the part of the employee as having caused his termination. These two instances were as much Alamo's fault as Blumetti's.
REVERSED.
PETERSON, C.J., and GOSHORN, J., concur.
NOTES
[1] See Lewis v. Unemployment Appeals Commission, 498 So.2d 608, 610 (Fla. 5th DCA 1986); Hines v. Department of Labor & Employment Sec., 455 So.2d 1104, 1106 (Fla. 3d DCA 1984).
[2] See Tallahassee Housing Authority v. Florida Unemployment Appeals Commission, 483 So.2d 413 (Fla.1986). See also Sumlar v. Intermodal Services, Inc., 429 So.2d 364 (Fla. 1st DCA 1983).
[3] Smith said at one point in his testimony that Blumetti was two hours late on August 2nd, and at another that he was twenty-six minutes late.