758 So.2d 649 (2000)
Timothy MASON, Sr., Petitioner,
v.
LOAD KING MANUFACTURING COMPANY and the Florida Unemployment Appeals Commission, Respondents.
No. SC93356.
Supreme Court of Florida.
May 11, 2000.
*651 Leatrice Williams Walton and Mitchell S. Ritchie, Jacksonville, Florida, for Petitioner.
John D. Maher, Tallahassee, Florida, for Respondents.
PER CURIAM.
We have for review Mason v. Load King Manufacturing Co., 715 So.2d 279 (Fla. 1st DCA 1998), on the basis of express and direct conflict with the opinion in Blumetti v. Unemployment Appeals Commission, 675 So.2d 689 (Fla. 5th DCA 1996). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the following reasons, we approve the rule in Mason finding that unemployment benefits are appropriately denied when an employer can clearly demonstrate substantial and excessive unexcused absenteeism by an employee as the basis for discharge, regardless of whether the incident immediately precipitating the employee's actual termination is excused.

PROCEEDINGS TO DATE
Timothy Mason worked as a shear operator for Load King Manufacturing Company from September 26, 1996, until his discharge for repeated attendance violations on February 13, 1997. Load King has a progressive disciplinary policy which prohibits excessive absenteeism and tardiness. Pursuant to the policy, the employer applies a point system to each employee's attendance record. If, for example, an employee accumulates a total of ten points within a twelve-month period, that employee may be subject to discipline, including termination. Mason signed Load King's company manual representing that he had read and understood Load King's policies and rules, which included this attendance policy.
From September 26, 1996, through February 1, 1997, a period of approximately four months, Mason received eleven points, all resulting from numerous absences and late arrivals. Hence, his point total during the four-month period already exceeded *652 the maximum points allowed for a one-year period. On January 29, 1997, his supervisor counseled him about his attendance and gave him a written warning. Subsequently, Load King suspended him from work on February 3 and 4, and warned him that his job was in jeopardy. After this suspension, on February 8, 1997, Mason left work early, although with the approval of his immediate supervisor, because of personal illness. Five days later, on February 13, Mason was late because the individual with whom he rode to work did not pick him up and he was forced to walk. Mason was discharged on February 13 due to his attendance problems.
On February 20, 1997, Mason filed a claim for unemployment compensation benefits. In a Notice of Claims Determination dated March 13, 1997, Mason was found to be disqualified for unemployment compensation benefits because of misconduct connected with his work.[1] Mason appealed, but this decision was affirmed by the appeals referee, and then subsequently affirmed by the Unemployment Appeals Commission. Finally, Mason sought review in the First District, which affirmed the prior rulings and held that an employer's burden of proving misconduct on the part of the employee can be met by proof of the worker's employment history of excessive and unauthorized absenteeism, which may otherwise be tantamount to misconduct. See Mason, 715 So.2d at 280-81.
Mason has sought review here based on alleged conflict with the Fifth District's decision in Blumetti, which found that the employer had not satisfied its burden of proving misconduct in a similar situation because it found the incidents of alleged misconduct immediately precipitating the employee's termination excusable. See Blumetti, 675 So.2d at 691. Both Blumetti and Mason rely on our decision in Tallahassee Housing Authority v. Florida Unemployment Appeals Commission, 483 So.2d 413 (Fla.1986).

Tallahassee Housing Authority
In Tallahassee Housing Authority, an employee, Barron, applied for unemployment compensation after his discharge from the Tallahassee Housing Authority. The claims adjudicator found that Barron was discharged for excessive absenteeism, which constituted misconduct connected with work; therefore, he was not entitled to benefits. Subsequently, at an evidentiary hearing before the appeals referee, the Tallahassee Housing Authority presented a three-page summary of Barron's attendance records as proof of his excessive absenteeism. Based on the attendance record reflected in this summary, the referee affirmed the claims adjudicator's finding that Barron was guilty of misconduct and not entitled to unemployment compensation. The Unemployment Appeals Commission reversed, finding that the summary relied on by the referee was inadmissable hearsay.[2]
On appeal, the First District rejected the Housing Authority's argument that a showing of continued absenteeism alone is sufficient to justify termination. See Tallahassee Housing Auth. v. Florida Unemployment Appeals Comm'n, 463 So.2d 1216 *653 (Fla. 1st DCA 1985). More specifically, the court wrote:
Even accepting the summary as admissible evidence, we affirm the commission's reversal of the appeals referee on the basis of the commission's application of the law to this case. In our view, although excessive absenteeism or tardiness may constitute misconduct which justifies termination of employment and therefore precludes collection of unemployment compensation benefits, Sanchez v. Department of Labor, Etc., 411 So.2d 313 (Fla. 3d DCA 1982), an employer has the burden under section 443.036(24), Florida Statutes, to show misconduct with a preponderance of proof that the absences were indeed unexcusable and in detriment to the employer's interests.
Id. at 1218. However, upon review in this Court, we expressly rejected the reasoning of the First District and held:
We reject the reasoning of the district court in the instant case. In our view, excessive unauthorized absenteeism presumptively hampers the operation of a business and is inherently detrimental to an employer. We hold, therefore, that a finding of misconduct under section 443.036(24) is justified when an employer presents substantial competent evidence of an employee's excessive unauthorized absenteeism. Once excessive unauthorized absenteeism is established, the burden is on the employee to rebut the presumption that his absenteeism can be characterized as "misconduct" within the meaning of the statute.
Tallahassee Housing Authority, 483 So.2d at 414 (emphasis added). Even though we ultimately found no competent, substantial evidence to support a finding of misconduct, our ruling was based on the fact that the summary prepared by the Housing Authority was not admissible evidence. See id. at 415-16.

Blumetti
In Blumetti, the employee Jay Blumetti appealed the Unemployment Appeals Commission's denial of unemployment compensation benefits due to Blumetti's excessive tardiness. On appeal, the Fifth District noted that Blumetti had been terminated because of his tardiness record in June, July and August. At the end of June, he had received a written warning that any further tardiness or infractions could result in termination. On July 20, he received another written warning for leaving his job without permission. However, the court found that the employer relied primarily on two instances occurring on July 20 and August 6 to justify Blumetti's termination, and the court found inadequate evidence to support a conclusion that these incidents were unexcused and Blumetti's fault.
The court cited our decision in Tallahassee Housing Authority, and held that in tardiness cases, the employer "must establish by a preponderance of the evidence that the former employee's tardiness was inexcusable and detrimental to the employer's interest." 675 So.2d at 690. Finding that neither of the two most recent instances on which the employer relied to justify Blumetti's termination could be characterized as wanton disregard for the employer's interests or a deliberate violation of the employer's rules to constitute misconduct, the court reversed the denial of Blumetti's unemployment compensation benefits. See id. at 691.

THIS CASE
In Mason, the First District was faced with a situation somewhat similar to the one faced by the Fifth District in Blumetti. Mason's two prior incidents before he was terminated-leaving work early because of personal illness and reporting to work late because his transportation failed to pick him up, were found to be excusable by the referee. Notwithstanding, the referee found that Mason's prior record evidenced a deliberate disregard of *654 his duties and obligations to the employer. The First District agreed. The First District also acknowledged the decision in Blumetti, but found that it applied the wrong standard. Specifically, it stated: "We cannot agree with Blumetti that an employer's burden in establishing misconduct is met only by a showing that the conduct immediately precipitating the employee's termination from employment was inexcusable." Mason, 715 So.2d at 280.
As previously mentioned, the statutory provisions defining misconduct are the same today as they were in 1985. Section 443.036(26) defines misconduct as:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employees duties and obligations to his employer.
In Tallahassee Housing Authority we held that an employer satisfies his burden of proving "misconduct under section 443.036(24) ... when an employer presents substantial competent evidence of an employee's excessive unauthorized absenteeism." 483 So.2d at 414. Once an employer has proven an employee's excessive unauthorized absenteeism, the burden is properly shifted to the employee to rebut the presumption that his absenteeism can be characterized as misconduct. See id.
The shifting of the burden to the employee to disprove misconduct in Tallahassee Housing Authority was predicated upon the presentation of satisfactory proof by an employer of a serious and identifiable pattern of excessive absenteeism or late arrivals.[3] For example, to prove "excessive unauthorized absenteeism," an employer must prove more than one act. See e.g., Higgins v. Iowa Dep't of Job Service, 350 N.W.2d 187, 192 (Iowa 1984) (stating that the determination of whether "unexcused absenteeism" is "excessive" necessarily requires the consideration of past acts and warnings). It logically follows that the employee's entire course of conduct must be considered, not just the acts immediately precipitating the employee's discharge. In fact, at least one Florida case has found misconduct and denied unemployment compensation even when the final act leading directly to the employee's discharge was not proved by the employer. See C.F. Industries, Inc. v. Long, 364 So.2d 864 (Fla. 2d DCA 1978).[4]
In order to prove misconduct under Tallahassee Housing Authority, employers have the burden of demonstrating both excessiveness and wilfulness in the employee's actions. The term "unauthorized" implicitly connotes an element of *655 wilfulness because it means that the absences were unexcused and without the permission of the employer. By "unauthorized absences," we are generally referring to those absences where the employee has wilfully chosen to violate her fundamental obligation to an employer to come to work and carry out her assigned duties. Obviously, the failure of an employee to carry out his or her obligation can be devastating to the functioning of an employer's business. Excessiveness must also be proven. While we realize that excessiveness may well depend on factors such as the particular employment context and presence or absence of workplace guidelines, we do not deem it unreasonable to require an employer who seeks to deny a former employee unemployment compensation benefits to meet this burden.
In defining misconduct, courts are required to liberally construe the statute in favor of the employee. See Roberts v. Diehl, 707 So.2d 869 (Fla. 2d DCA 1998); Baptiste v. Waste Management, Inc., 701 So.2d 386 (Fla. 3d DCA 1997); Gilbert v. Department of Corrections, 696 So.2d 416 (Fla. 1st DCA 1997); Foote v. Unemployment Appeals Comm'n, 659 So.2d 1232 (Fla. 5th DCA 1995). Additionally, awards determinations must be made against the backdrop that the remedial aspect of the unemployment compensation statutory scheme requires a liberal construction in favor of awarding benefits. See St. Joe Paper Co. v. Gautreaux, 180 So.2d 668 (Fla. 1st DCA 1965). The denial of unemployment benefits is a very serious consequence with very serious repercussions for employees, adopted by the Legislature only to deter misconduct in the employment context. As such, awards determinations under this statutory scheme should not be taken lightly and should not be made via a mere technical and formalistic procedure.
Load King hired Mason with the expectation and on the reliance that he would comply with its attendance policy. Yet, in a period of just over four months, Mason was absent four times, late four times and left early one time. He accumulated more points under the company's attendance policy in this four-month period than the allotted yearly amount. As noted earlier, Mason accepted his position while on actual notice of the company's attendance policy. Given his history of unauthorized absenteeism with the company and the fact that within two weeks after having served a two-day suspension, Mason left early on one day and was late on another day, we agree that the record supports a finding of an established pattern of excessive absenteeism and tardiness sufficient to constitute misconduct and render Mason ineligible to receive benefits. See Thurber v. Hillier & Wanless, P.A., 642 So.2d 75 (Fla. 4th DCA 1994) (employee's absence from work without authorization constituted misconduct and rendered him ineligible for benefits); Sanchez v. Dep't of Labor & Employment Security, 411 So.2d 313 (Fla. 3d DCA 1982) (employee's failure to work minimum of forty hours during any of the four-month period he was employed together with an authorized absence from work constituted misconduct); Castillo v. Florida Dep't of Commerce, 253 So.2d 162 (Fla. 2d DCA 1971) (employee's continued absenteeism severely hampering the employer in carrying workload of the plant constituted misconduct for which unemployment compensation could be denied). Applying the standard espoused in Tallahassee Housing Authority, we find that Load King Manufacturing satisfied its burden of proof, and, as a result, Mason was properly terminated for misconduct as defined in section 443.036(26), Florida Statutes (1995).
Mason alleges that under the rule in C.F. Industries and the District Court's decision in the present case, an employer can in essence hold an employee hostage for any length of time, fire him for any reason, and then deny him unemployment benefits citing excessive unauthorized absenteeism as the reason. We find no merit to Mason's argument. When dealing with *656 the unemployment compensation scheme, the referee must factor this length of time into his decision. In other words, in absenteeism cases, the more attenuated the precipitating acts leading to the employee's termination are from the established pattern of absenteeism, the harder it becomes for the employer to prove misconduct under the heavy burden established in Tallahassee Housing Authority and its progeny. Conversely, the opposite is true. The closer the final act leading to the discharge is to the pattern of absenteeism, the easier it should be for the employer to prove misconduct under the unemployment statutory scheme.[5] Moreover, as in Tallahassee Housing Authority, we emphasize that before an award of unemployment benefits can be denied, the employer must prove misconduct by satisfying the heavy burden of proving "excessive unauthorized absenteeism."
We do not believe that the opinion in Blumetti necessarily conflicts with our holding in Tallahassee Housing Authority or the First District's holding in this case. Rather, we read the Blumetti opinion as finding a problem with the evidence of the employee's misconduct. In Blumetti the Fifth District acknowledged our holding in Tallahassee Housing Authority but held that the employer's proof was insufficient. Although in dicta the court stated that it would have probably affirmed the case had Blumetti's employer terminated him after he arrived to work a few minutes late in early August, following written warnings in June, the court went on to find that the employer had not proven that a number of the incidents primarily relied upon to prove misconduct were the employee's fault as claimed. See Blumetti, 675 So.2d at 691. Accordingly, the court implicitly held that the few instances of alleged misconduct remaining were insufficient to constitute excessive unauthorized absenteeism. Such a record contrasts sharply with the record here demonstrating misconduct regardless of the incidents immediately preceding Mason's discharge. The Blumetti court did not say that the employer must prove that the conduct immediately precipitating the employee's termination was inexcusable in order to meet its burden of establishing misconduct. However, to the extent that the opinion may be read that way, as it apparently was by the First District here, we disapprove of such a requirement.

CONCLUSION
In light of this state's prior decisions, especially the standard set out by this Court in Tallahassee Housing Authority requiring the employer to prove "excessive unauthorized absenteeism," and the public policy considerations set out above, we approve the decision of the district court in this case and disapprove Blumetti to the extent it conflicts with the views expressed herein.
It is so ordered.
HARDING, C.J., and WELLS, LEWIS and QUINCE, JJ., concur.
SHAW, J., dissents with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
*657 SHAW, J., dissenting.
The referee from the Unemployment Compensation Appeals Bureau ruled as follows: (1) "[A]ccumulated violations of the employer's interests over the course of a claimant's employment can show misconduct, even if the final incident leading to the discharge was not misconduct"; and (2) "[t]he claimant's refusal to report to work as scheduled for reasons of a noncompelling nature, evidences a deliberate disregard of his duties and obligations to the employer, and constitutes misconduct connected with work." The present majority opinion affirms both these rulings. I disagree.

I. FACTS
Mason was fired from his job at Load King Manufacturing Company due to his attendance record, and his application for unemployment compensation benefits was denied. The relevant facts are set forth in the referee's report:
The claimant was employed as a shear operator from September 27, 1996, until February 13, 1997. The employer has a progressive disciplinary policy, and known employer policy prohibits excessive absenteeism and lateness reporting for work. On December 16, 1996, the claimant was late reporting for work for unspecified reasons. The claimant was late reporting for work on December 18, 1996, with the approval of his immediate supervisor, because he had to go to school with his son. The claimant was late reporting for work on December 20, 1996, for unspecified reasons. The claimant had car trouble on occasion which would cause him to be late. On December 30, 1996, the claimant was absent for unspecified reasons. The claimant had previously been absent due to marital problems. The claimant was absent on January 27, 1997, for unspecified reasons. The claimant was absent on January 29, 1997, because he was trying to find a place to live, and was counseled about his attendance and given a written warning. The claimant was suspended on February 3 and 4, 1997, due to his attendance, and warned that his job was in jeopardy. The claimant left before the end of his shift on February 8, 1997, due to personal illness, with the approval of this immediate supervisor. The claimant was late reporting for work on February 13, 1997, because the individual with whom he rode to work did not pick him up and he had to walk. The claimant was discharged on February 13, 1997, due to his attendance.
The referee affirmed the adjudicator's order denying benefits, the Unemployment Appeals Commission (the "Commission") affirmed the referee's decision, and the district court affirmed the Commission's order. Mason contends that the tribunals erred.

II. THE APPLICABLE LAW
The present case is not a "wrongful discharge" case. The issue is not whether Load King had adequate grounds to fire Mason based on his lapses in attendance. Under Florida law, barring an agreement to the contrary, an employer generally can discharge an "at will" employee without cause.[6] Rather, the present case is a "denial of benefits" case. The issue is whether Mason was improperly denied unemployment benefits due to his attendance. The conditions surrounding Mason's firing are relevant because, under the applicable law, a worker discharged for "misconduct" is ineligible for benefits. The decision as to what constitutes "misconduct" in each case is made not by the employer but by the Commission, based on statutory criteria. The standard governing disqualification *658 is far more rigorous than the standard governing discharge.
The Florida Unemployment Compensation Law (the "Law") is codified in chapter 443, Florida Statutes (1997). In determining the scope of coverage under the Law, legislative intent is the polestar that guides a court's inquiry.[7] The legislative statement of policy is broad:
Declaration of public policy.As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and her or his family. The achievement of social security requires protection against this greatest hazard of our economic life.... The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police power of the state ... for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, subject, however, to the specific provisions of this chapter.
§ 443.021, Fla. Stat. (1997). The legislature has implemented a rule of liberal construction for chapter 443:
Rule of liberal construction.This chapter shall be liberally construed to accomplish its purpose to promote employment security.... [A]ll doubts as to the proper construction of any provision of this chapter shall be resolved in favor of conformity with such requirements.
§ 443.031, Fla. Stat. (1997).
A worker may be disqualified from benefits under chapter 443, inter alia, if he or she is fired for "misconduct":
Disqualification for benefits.An individual shall be disqualified for benefits:
(1) ... [I]f he or she has voluntarily left his or her work without good cause attributable to his or her employing unit or [if] the individual has been discharged by his or her employing unit for misconduct connected with his or her work, if so found by the division. The term "work," as used in this paragraph, means any work, whether fulltime, part-time, or temporary.
§ 443.101, Fla. Stat. (1997) (emphasis added). The term "misconduct" is defined thusly:
MISCONDUCT."Misconduct" includes, but is not limited to the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of the standards of behavior which the employer has the right to expect of his or her employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his or her employer.
§ 443.036(26), Fla. Stat. (1997) (emphasis added).
This Court in Tallahassee Housing Authority v. Florida Unemployment Appeals Commission, 483 So.2d 413 (Fla.1986), held that a finding of misconduct may be based on "excessive unauthorized absenteeism":

*659 In our view, excessive unauthorized absenteeism presumptively hampers the operation of a business and is inherently detrimental to any employer. We hold, therefore, that a finding of misconduct under section 443.036(24) is justified when an employer presents substantial competent evidence of an employee's excessive unauthorized absenteeism. Once excessive unauthorized absenteeism is established, the burden is on the employee to rebut the presumption that his absenteeism can be characterized as "misconduct" within the meaning of the statute.
Tallahassee Housing Authority, 483 So.2d at 414 (emphasis added). Stated in the converse: A finding of misconduct is not justified based on evidence of authorized absenteeism.[8]

III. THE PRESENT CASE
In the present case, the referee reached the following conclusions of law in her order denying benefits:
The record reflects that the claimant was discharged due to his attendance. Employers have a right to expect employees to report to work as scheduled unless the employee properly reports the absence and provides a compelling reason for it. The claimant was late on February 13, 1997, because he had to walk to work when his ride to work did not pick him up. The claimant's lateness was for a compelling reason. However, accumulated violations of the employers's interests over the course of the claimant's employment can show misconduct, even if the final incident leading to the discharge was not misconduct. By his own testimony, the claimant was late on occasion due to car trouble, or for unspecified reasons, and he had been absent due to marital problems, or because he was trying to find a place to live. The claimant had been counseled about his attendance and warned that his job was in jeopardy. The claimant's refusal to report to work as scheduled for reasons of a noncompelling nature, evidences a deliberate disregard of his duties and obligations to the employer, and constitutes misconduct connected with work. Accordingly, the claimant is not qualified to receive unemployment compensation benefits.
(Citation omitted; emphasis added.) I disagree with these conclusions. First, under the plain language of chapter 443, in order to justify disqualification the precipitating act itself must constitute "misconduct."[9] Second, Load King failed to show that either the precipitating act or Mason's prior record constituted "misconduct."

A. The Precipitating Act

The gist of the referee's ruling is that a worker can be disqualified from benefits based on a prior record of misconduct, even if the conduct that precipitated the discharge was authorized. This rule violates the plain language and broad purpose of chapter 443. Section 443.101(1) expressly states that disqualification is justified if the worker is "discharged ... for misconduct," and section 443.036(26) defines misconduct as "willful or wanton" conduct that "deliberately" disregards the employer's standards. When (as in the present case) an employer opts to counsel rather than fire a worker based on a prior record of misconduct, the employer at that point elects not to discharge the worker for the prior record standing alone. If the employer later fires the worker based on a subsequent precipitating act, the employer at that point discharges the worker for the *660 precipitating act-either standing alone or in conjunction with the prior record-not for the prior record. To say otherwise is to play word games with chapter 443.
To ignore the plain language of these statutes and hold (as the present majority opinion does) that disqualification may be based on a precipitating act that is authorized is to create a workplace governed not by the objective criteria set forth in chapter 443 but by each employer's subjective criteria for disqualification. A counseled worker will be at the mercy of his or her employer and can be "blindsided" at any timeand denied benefitsbased on an authorized or otherwise innocent act, even if the worker has scrupulously honored any bargain struck at counseling. This is precisely the evil that chapter 443 was intended to dispeli.e., social insecurity.[10] Under the plain language of the above statutes and the rule of liberal construction contained in section 443.031, the precipitating act itself-either standing alone or in conjunction with the prior record-must constitute misconduct.
In the present case, the referee found that the two incidents precipitating Mason's firing were authorized or otherwise comported with chapter 443.[11] Mason was counseled on January 29, 1997, concerning his absenteeism. He subsequently left work early due to illness on February 8 with the approval of his supervisor,[12] and he arrived late at work on February 13 after his "ride" failed to show and Mason was forced to walk.[13] Neither act constituted the same type of conduct for which he had been counseled a few days earlier. The printed counseling form, entitled "EMPLOYEE WARNING NOTICE," that was used to counsel Mason on January 29 contained a box labeled "Lateness/Early Quit," and this box was not checked off; only the box stating "Excessive Absences" was checked off. Mason explained:
Okay. They said that I was terminated for absenteeism.... Okay. After I got my two day suspension, I missed no more days, and the day I came to work 30 minutes24 min30 minutes late, they terminate me. Well, I had never had no problem being late `cause I [had gotten that] straightened out....
Under the plain language of chapter 443, the referee should not have disregarded the fact that the two precipitating acts did not constitute misconduct.

B. The Prior Record

In her order denying benefits, the referee stated that Mason's "refusal to report to work as scheduled for reasons of a noncompelling nature" constituted valid grounds for disqualification. This is the wrong standard for disqualification. As noted above, chapter 443 authorizes disqualification based on willful or wanton conduct that deliberately disregards the employer's standards. The criterion applied by the refereei.e., whether the absence was for a compelling reasondiffers vastly from this statutory definition and injects into the scheme an element of subjectiveness and uncertainty that the statute seeks to avoid, for who is to say what constitutes a "compelling" reason? (How pressing must a transportation problem be? How severe must a personal illness or injury be? How dire a family problem? How catastrophic an act of God?)
Pursuant to this Court's holding in Tallahassee Housing, the proper criterion for determining whether a lapse in attendance constitutes misconduct is whether the lapse was authorized. In the present case, the referee determined that the two precipitating *661 acts and several of Mason's prior lapses in attendance were authorized or otherwise comported with chapter 443. The referee, however, did not determine that the remaining lapses in Mason's prior record were un authorized.[14] Nor could the referee have done so, for no such inquiry was made at the hearing. Mason was tardy or absent on a number of occasions throughout his tenure at Load King, but the referee asked only whether one specific lapse (on February 8) was approved by the employer and concluded that this lapse was authorized.[15]
On the present record, it is entirely possible that Mason was fired for excessive authorized lapses in attendance. In point of fact, the printed counseling form that Load King gave Mason on January 29 depicted a number of possible offenses, but the critical box stating "Unexcused Absence(s)" was not checked off. The referee concluded simply that Mason "was discharged due to his attendance." Thus, not only did Load King fail to show that the two acts precipitating Mason's discharge constituted misconduct, but Load King also failed to show that the lapses in his prior record were unauthorized.

IV. CONCLUSION
Based on the foregoing, I conclude that the Commission erred in disqualifying Mason from unemployment benefits based on "misconduct." Load King did not establish by competent substantial evidence that Mason was discharged for excessive un authorized lapses in attendance, as required by Tallahassee Housing. Rather, Load King established simply that he was fired "due to his attendance." While this may have been a legitimate reason for Load King to discharge Mason, it was not a valid reason for the Commission to disqualify him.
I would quash Mason v. Load King Manufacturing Co., 715 So.2d 279 (Fla. 1st DCA 1998).[16]
ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] An employee can be disqualified from receiving compensation benefits under section 443.101, Florida Statutes (1995), if it is found that the employee was terminated for misconduct as defined in section 443.036(26), Florida Statutes (1995). Under section 443.036(26), misconduct is defined as:

(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employees duties and obligations to his employer.
[2] The definition of misconduct as provided in section 443.036(24) is the same as it was in 1985.
[3] Although Tallahassee Housing Authority dealt with absenteeism and Blumetti dealt with tardiness, they both deal with attendance problems and are sufficiently analogous to be treated the same. In fact, excessive tardiness has been held to constitute misconduct under the statute. See, e.g., Martinson v. Breit's Tower Service, Inc., 680 So.2d 599 (Fla. 3d DCA 1996); Sumlar v. Intermodal Services, Inc., 429 So.2d 364 (Fla. 1st DCA 1983); Sanchez v. Department of Labor & Employment Security, 411 So.2d 313 (Fla. 3d DCA 1982).
[4] In C.F. Industries, the employee was discharged for excessive tardiness, excessive absenteeism, violation of safety rules, failing to report an accident involving injury, and unsatisfactory performance. See id. at 865. In each case, the employee was given a warning. See id. The employee argued that because the final act leading to his termination (an accusation that the employee had falsified records) was not proven, he could not be found to have been discharged for misconduct associated with his work as defined by the statute. See id. However, even though the referee found that the employer had failed to prove that the employee had falsified records, the court held there was competent and substantial evidence to support the referee's finding that the employee was discharged for misconduct connected with his work. See id. at 866.
[5] As a matter of public policy, adopting the rule of the district court's decision in this case may actually favor employees in at least one significant way. In unemployment compensation cases, it appears that employers choose disciplinary measures less severe than termination, even in cases where if the employer had chosen to terminate the employee, a denial of unemployment benefits would have been justified. See, e.g., Mason, 715 So.2d at 279 (employee suspended before being terminated); Blumetti, 675 So.2d at 691 (employee received numerous warnings before finally being terminated); C.F. Industries, Inc., 364 So.2d at 865 (employee given warning or layoff after each incident of misconduct before finally being terminated). In cases where the employee has already exhibited a history of misconduct, our decision today encourages employers to continue to issue these warnings and suspensions to employees for violations of company attendance policies and to continue to work with these employees, rather than simply terminating them to avoid the liability of unemployment benefits.
[6] See, e.g., DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253, 1254 (Fla.1980) ("[W]here the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of the employment contract.") (quoting DeMarco v. Publix Super Markets, Inc., 360 So.2d 134, 136 (Fla. 3d DCA 1978)).
[7] See, e.g., Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla. 1997).
[8] See Blumetti v. Unemployment Appeals Comm'n, 675 So.2d 689, 690 (Fla. 5th DCA 1996) ("[T]he employer in such cases must establish ... that the former employee's tardiness was in excusable ....") (emphasis added).
[9] See Blumetti v. Unemployment Appeals Comm'n, 675 So.2d 689 (Fla. 5th DCA 1996) (holding that disqualification cannot be based on Blumetti's prior record of misconduct if the precipitating act was excusable).
[10] See generally § 443.021, Fla. Stat. (1997).
[11] See supra notes 7-8.
[12] The referee found that this lapse in attendance was made with "the approval of his immediate supervisor."
[13] The referee found that this lapse in attendance "was for a compelling reason."
[14] As noted above, the referee made the following findings concerning Mason's lapses in attendance: December 16 (tardy; unspecified reasons); December 18 (tardy; excused); December 20 (tardy; unspecified reasons); December 30 (absent; unspecified reasons); January 27 (absent; unspecified reasons); January 29 (absent; finding a place to live) (counseled); February 3 & 4 (suspended); February 8 (left early; excused); February 13 (tardy; excused). The record shows that Mason's supervisor, William Cromity, did not recall why Mason was tardy or absent on December 16, 20, 30, and January 27. Mason attributed the lapses in attendance to car trouble (December 16, December 20), or he too did not recall (December 30, January 27). Mason testified that he always called in when he was going to be late or absent:

REFEREE: Okay. Let me ask you, Mr. Mason, the times that you were absent, did you notify someone that you weren't gonna be reporting for work?
MASON: Every time I missed a day, I called.
REFEREE: What if you were gonna be late?
MASON: When I'm a[sic] be late, I call.
[15] On only one occasion (i.e., concerning Mason's leaving work early on February 8, 1997) did the referee ask whether the lapse in attendance was authorized.
[16] I also would disapprove C.F. Industries, Inc. v. Long, 364 So.2d 864 (Fla. 2d DCA 1978). I would approve the result in Blumetti v. Unemployment Appeals Commission, 675 So.2d 689 (Fla. 5th DCA 1996).