BENTON, J.,
dissenting.
I respectfully dissent. At issue is whether Mr. Moffat, the discharged employee claiming benefits, was guilty of misconduct connected with work of a kind that disqualified him for unemployment compensation benefits. “Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits.” Livingston v. Tucker Constr. & Eng’g, Inc., 656 So.2d 499, 500 (Fla. 2d DCA 1995) (citing Doyle v. Fla. Unemployment Appeals Comm’n, 635 So.2d 1028, 1031 (Fla. 2d DCA 1994)).
Indian Lake did not meet its burden to prove that this claimant “behaved intentionally or with a degree of carelessness or negligence that manifests a wrongful intent or evil design, or otherwise acted in a way that would constitute misconduct as defined in section 443.046(29).” Yost v. Unemployment Appeals Comm’n, 848 So.2d 1235, 1238 (Fla. 2d DCA 2003) (citing Frazier v. Home Shopping Club LP, 784 So.2d 1190, 1192 (Fla. 2d DCA 2001)).
Under well-established law, this statute is to be liberally interpreted in favor of an employee, and its disqualifying provisions are to be construed narrowly in determining whether the employee’s actions support the denial of benefits. See Mason v. Load King Mfg. Co., 758 So.2d 649 (Fla.2000). It is also well established that the employer has the burden of proving that the employee was terminated for misconduct in connection with his work. Id.; see also Barchoff v. Shells of St. Pete Beach, Inc., 787 So.2d 935 (Fla. 2d DCA 2001); Doyle[v. Fla. Unemployment Appeals Comm’n, 635 So.2d 1028, 1031 (Fla. 2d DCA 1994) ]. To meet its burden, “the employer must show more than an employee’s inefficiency, unsatisfactory conduct, or failure to perform in the workplace.” Id.
*698 Thomas v. United Parcel Serv., Inc., 864 So.2d 567, 569 (Fla. 2d DCA 2004). Indian Lake did not prove “willful or wanton disregard of an employer’s interests” or carelessness evincing “substantial disregard of the employer’s interests.” § 443.036(29)(a> (b), Fla. Stat. (2008). The evidence revealed friction between Mr. Moffat and Mr. Robinson, general manager for Indian Lake Estates, and that Mr. Moffat did not do everything Mr. Robinson told him to, but competent, substantial evidence that Mr. Moffat disregarded Indian Lake’s interests or was insubordinate was not adduced.
The employer sought to prove disqualification on two factual bases, one of which the appeals referee did not find the employer had proven: Mr. Robinson testified that Mr. Moffat failed to “process” membership dues from a member wanting to renew his club membership. Specifically, Mr. Robinson testified that on November 8, 2008, a club member told some third party that, when the member approached Mr. Moffat about renewing his golf membership, Mr. Moffat advised the member to wait till the new year.[1] Mr. Robinson testified that this was troubling because the club was “having some monetary problems inside the corporation.”[2] On the other hand, Mr. Moffat testified that he did not refuse to renew the membership, while conceding he had informed the member that, because it was November and the club was changing its policy so that every member would pay dues on January 1, it would be cheaper for the member to pay each time he played the course until the new year began. He also testified that Mr. Robinson had never spoken to him about the incident. After hearing the testimony, the appeals referee found that the employer “may have had bad information regarding the alleged refusal to renew a membership.”
The second factual scenario asserted as a basis for disqualification was Mr. Mof-fat’s failure to issue a cash register receipt to each golfer before the golfer played Indian Lake’s course: Mr. Robinson testified for the employer that he spoke to Mr. Moffat, and gave him a written warning, on October 29, 2008, after he heard a complaint that golfers were being allowed to play without having receipts.[3] According to Mr. Robinson, the purpose of issuing register receipts to each player was to enable the golf committee to “keep track of not only paying players but also membership players who were going out on the course so we could get an accurate number as to who was on the course per day.” Mr. Moffat testified, without contradiction, *699 however, that the cash register tape at the end of the day always contained accurate totals for both categories.[4] He also testified that physical transfer of the register receipt to an individual player did nothing to assure accuracy when, as was usually the ease, there was not a separate “starter” or “ranger” on the course to collect the receipts.[5]
The appeals referee credited Mr. Robinson’s testimony that he observed Mr. Mof-fat fail to issue receipts to a foursome on November 7, 2008. At that time, Mr. Robinson testified, he reminded Mr. Moffat of the policy and Mr. Moffat said he would follow through. On November 8, however, a member of the golf committee complained that Mr. Moffat was not issuing receipts to members. Largely for this reason, Mr. Robinson suspended Mr. Mof-fat without pay on November 10, and terminated his employment on November 13.
“Whether an employer has the right to terminate an employee’s employment and whether a terminated employee meets the disqualification criteria set out in the unemployment compensation statute are separate issues.” Lusby v. Unemployment Appeals Comm’n, 697 So.2d 567, 568 (Fla. 1st DCA 1997). “In defining misconduct, courts are required to liberally construe the [unemployment compensation] statute in favor of the employee.” Mason v. Load King Mfg. Co., 758 So.2d 649, 655 (Fla.2000).
Although his failure to hand every golfer a register receipt may have given the employer “good cause” to terminate his employment — a question we have not been asked to decide — this conduct neither evinced “willful or wanton disregard of an employer’s interests,” section 443.036(29)(a), Fla. Stat. (2008), nor amounted to “negligence to a degree or recurrence that manifests culpability, wrongful intent, or evil design.” § 443.036(29)(b), Fla. Stat. (2008). There has never been any suggestion that Mr. Moffat allowed non-members to play golf without paying, or that he pocketed any fees. Cf. Gongaware v. Unemployment Appeals Comm’n, 882 So.2d 453 (Fla. 4th DCA 2004). There was no evidence that the club was unable to determine the number both of paying guests and of members who played the course at the end of each day, the need for which was the reason given for requiring physical delivery of a receipt to each golfer.
*700 The evidence in this record does not support a finding of insubordination. Mr. Moffat did not “challenge his superiors,” much less defy them in the presence of other employees as the employee did in Hines v. Dep’t of Labor & Employment Sec., 455 So.2d 1104, 1106-07 (Fla. 3d DCA 1984). However unsatisfactory to Mr. Robinson, Mr. Moffat’s job performance did not render him ineligible for unemployment compensation benefits under the statutory standard. See Borland v. Unemployment Appeals Comm’n, 910 So.2d 320, 322 (Fla. 2d DCA 2005); Smith v. Unemployment Appeals Comm’n, 831 So.2d 249, 250 (Fla. 2d DCA 2002); Frazier v. Home Shopping Club LP, 784 So.2d 1190, 1191-92 (Fla. 2d DCA 2001).

.Standing alone, hearsay is insufficient to support a finding in an unemployment compensation proceeding. § 120.57(l)(c), Fla. Stat. (2008).
In administrative proceedings, including hearings before unemployment compensation appeals referees, hearsay evidence is admissible only for the purpose of explaining or supplementing other evidence. It is not sufficient, standing alone, to prove a material fact in issue unless it would be admissible over objection in a civil proceeding. See § 120.57(l)(c), Fla. Stat. (2001); Doyle v. Fla. Unemployment Appeals Comm'n, 635 So.2d 1028, 1032 (Fla. 2d DCA 1994); see also Brown v. Int’l Paper Co., 710 So.2d 666, 668 (Fla. 2d DCA 1998).
Yost v. Unemployment Appeals Comm'n, 848 So.2d 1235, 1237 (Fla. 2d DCA 2003).

. This testimony of Mr. Robinson buttresses the assertion, in Mr. Moffat's appeal of the initial determination, that the club was having financial trouble and wanted to terminate his contract to reduce expenses. In the same document, Mr. Moffat acknowledged a personality conflict with Mr. Robinson.

. Mr. Moffat testified that he was told to give out receipts at the end of February, and that nothing else was said to him on the subject until October.

. Mr. Robinson asked if he had been instructed to issue receipts to players so that there would be an accurate count on the register tape, and Mr. Moffat testified without contradiction that that was done — that the cash register at closing each day contained a breakdown of how many eighteen-hole rounds were played, how many nine-hole rounds were played, and how many members played the course.

. This testimony was also uncontroverted. See 24 Fla. Jur. 2d, Evidence & Witnesses § 491 (2010) (noting that the trier of fact has no right to reject uncontroverted testimony of a witness, even if the witness is an interested party, unless the testimony is "inherently improbable or unreasonable, contrary to natural laws, opposed to knowledge, or contradictory within itself.”); Ramada Inn Surfside v. Swanson, 560 So.2d 300, 302 (Fla. 1st DCA 1990) (holding that "since this testimony was un-controverted, the judge was not at liberty to reject it without explicating sufficient reasons for so doing”); Carroll v. Belknap Inc., 536 So.2d 1056, 1057 (Fla. 1st DCA 1988) (holding that "[ajlthough the deputy is the trier of fact he cannot reject a claimant's uncontro-verted testimony simply because he finds it not credible when the lack of credibility has no apparent support in the record”); McCandless v. M.M. Parrish Constr., 449 So.2d 830, 834 (Fla. 1st DCA 1984) ("Where the testimony and evidence are uncontradict-ed, a finding contrary to the manifest weight of such testimony and evidence is not supported by competent substantial evidence.”).