BRUCE BARNUM, EXECUTIVE DIRECTOR OF THE NEVADA EMPLOYMENT SECURITY DEPARTMENT, APPELLANT, *v.* IVAN V. WILLIAMS, RESPONDENT.

No. 5163

January 10, 1968                    436 P.2d 219

*Harvey Dickerson,* Attorney General, and *Lorin D. Parraguirre,* Special Deputy Attorney General, for Appellant.

*Robert L. Reid,* of Las Vegas, for Respondent.

## OPINION

By the Court, COLLINS, J.:

This appeal is from an order of the district court reversing an order of the board of review of the Nevada Employment Security Department denying unemployment benefits to respondent, Ivan V. Williams. A second question involves the propriety of an award of attorney's fees to respondent by the district court.

We conclude the trial court's orders to be in error, reverse them and reinstate the order of the board of review.

The record in this case indicates that Williams was employed as a truck driver for Adelson, Inc., which did business under the name of Food Fair Markets. He was originally hired in 1955 and worked until November 19, 1961. He was rehired in 1962 and quit in March 1963. His last period of employment with that company began in November 1964, which continued until he was suspended and later discharged on June 21, 1965. While driving from Los Angeles to Las Vegas with a truckload of merchandise, he collided with the rear end of a car going in the same direction of travel as his own. One person died as a result of that accident and three others were injured

to an unknown extent. So far as the record shows, no fault has yet been established for that accident.

Following the accident, Williams' employer discovered the absence of the chart in the truck's tachograph, a device which maintains a continuous log of the truck's activity, including its speed at all times. Company policy required that the tachograph be operated on all trips of its trucks. Williams admitted knowledge of this policy but stated that he had inadvertently forgotten to place the graph in the truck on that particular trip. He was suspended from his job and shortly thereafter discharged.

Williams' first claim for unemployment benefits simply stated that he had been discharged by his employer because of "Violation of company policy. I forgot to put a chart in the tachograph. Terminated." The employer opposed the claim and stated in its letter of objection that Williams was discharged because he "failed to have a tachograph chart in his equipment while operating it." Neither the employee nor the employer referred to the accident in the initial claim or objection. The department thereupon made an award of unemployment benefits, concluding that Williams was discharged but not for misconduct under NRS 612.385. The employer upon being advised of that award filed an appeal which for the first time asserted the fact Williams had been involved in an accident. The department then sought rebuttal from Williams before proceeding with the appeal. Williams' reply indicated that "I did have an accident with the truck June 19, 1965 when I was returning to Las Vegas with a load of merchandise. I did not mention it when I filed my claim because all I could report was the reason they gave me, which was 'Violation of company policy.' I knew within myself that part of the reason I was terminated was because of the accident but I cannot discuss this with the employment service or anyone excepting the company I work for or the attorneys involved."

The appeals referee, pursuant to NRS 612.500(2), conducted an extensive hearing, both in Las Vegas and in Los Angeles. Williams was present and participated in both hearings. The referee reversed the award of benefits by the department and disqualified Williams from receiving further compensation for 16 weeks on the ground he was discharged for misconduct in his work. The decision of the appeals referee was affirmed in all respects by the board of review.

Thereafter, Williams sought review of the administrative decision in the district court pursuant to NRS 612.530. The district court found that the Employment Security Department

acted capriciously and in excess of its jurisdiction by improperly considering the issue of misconduct on appeal and by basing its denial of unemployment benefits upon conclusions of fact and law not supported by the evidence. Due to the above-mentioned reasons the court reversed the order denying unemployment benefits to Williams and reinstated the original award. In addition, it granted attorney's fees to respondent in the amount of $500.

This appeal presents the following issues:

(1) Was the issue of misconduct properly before the appeals referee?

(2) Was the appeals referee correct in reviewing all of the evidence?

(3) Was the district court correct in concluding that the findings of the appeals referee were not supported by the evidence?

(4) Was the award of attorney's fees proper?

In deciding that the issue of misconduct was not properly before the appeals referee, the district court noted that there had been no specific allegation of misconduct and also that both the employee and the employer cited the same reason for the discharge of respondent. We do not agree that the original claim for benefits and the notice of protest so limit the scope of the appeal. We feel that the original claim for benefits, notice to employer, and protest of employer amount to no more than the barest notice to each of the parties of the fact that the claim has been made and protested, and that the procedural machinery of the act has been set into motion. The procedure for filing claims and protests is very informal and quite summary in nature. It is not required to be done under oath and certainly cannot be thought of as a fact-finding hearing. Indeed, the first real opportunity to fully develop the facts surrounding the claim and the protest comes at the hearing on appeal. We do not feel that the bare and minimum statement of the notice of claim and notice of protest finally fix the scope of the hearing on appeal and accordingly hold that the employer was not precluded from proceeding with his appeal.

We turn next to the companion issue of the scope of the appellate hearing. We think the statute clearly confers the right upon the appeals referee to explore all the evidence. NRS 612.500(2) states that "An appeal tribunal shall inquire into and develop all facts bearing on the issues and shall receive and consider evidence without regard to statutory and common

law rules. In addition to the issues raised by the appealed determination, the tribunal may consider all issues affecting the claimant's rights to benefits from the beginning of the period covered by the determination to the date of the hearing." That is exactly what the appeals referee did. His conduct was proper under the statute and should have been upheld by the district court.

The function of the district court in reviewing administrative proceedings is set forth in both the cases and the statutes applicable here. We said recently in Board of Chiropractic Examiners v. Babtkis, 83 Nev. 385, 432 P.2d 498 (1967): "When the determination of an administrative board is challenged, the function of this court is identical to that of the district court. Urban Renewal Agency v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963); McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961). It is to review the evidence presented to the board and ascertain whether that body acted arbitrarily or capriciously and, therefore, abused its discretion."

It is also stated in NRS 612.530(4) that "In any judicial proceedings under this section, the finding of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." We must therefore inquire whether the district court adhered to the above-stated standard in reversing the findings of the appellate referee on the issue of Williams' "misconduct," the basis for his disqualification. NRS 612.385.

The term misconduct has been defined by the Employment Security Department as follows: "The term misconduct is used in an industrial sense, not a criminal sense. Nevada's highest administrative appeal body, the Board of Review, has defined misconduct as a deliberate violation or disregard on the part of the employee of standards of behavior which his employer has the right to expect. Carelessness or negligence on the part of the employee of such a degree as to show a substantial disregard of the employer's interests or the employee's duties and obligations to his employer are also considered misconduct connected with the work. Mere inefficiency or failure of performance because of inability or incapacity, ordinary negligence in isolated instances, or good faith errors in judgment or discretion are excluded in the definition of misconduct." That definition is almost identical to the language used by the court in Boynton Cab Co. v. Neubeck, 296 N.W. 636 (Wis. 1941).

After the conclusion of the hearings conducted in both Las Vegas and Los Angeles, the importance and significance of the tachograph was clearly shown by the evidence. Testimony was given explaining its importance in serving as "silent witness" to such things as the safety stops required to be made, the speed of the vehicle at every moment of the trip, and the duration of stops made by the vehicle along the way. The importance of the tachograph as related to this particular accident and possible liability therefor was also brought out extensively in these hearings. Company officials stated that if Williams was not exceeding the speed limit at the time of the accident the graph would reveal it, and if he was exceeding it, that also would be clearly shown. They stated that irrespective of who actually was at fault, the absence of the tachograph chart was extremely damaging to the company and deprived them of evidence to assist them in the resolution of the liability for the accident.

Also at these hearings it was brought out that the employer had a very strong suspicion that Williams had removed the chart from the tachograph after the accident. This suspicion was based on the possible incriminating effect of the tachograph in showing Williams' excessive speed, as well as the fact that Williams had never before failed to have a chart in a truck's device. Williams then took the stand and vehemently denied the charge, and insisted that he had simply forgotten on this occasion to install the chart. The inference that Williams' conduct was consistent with the suspicions of the employer is supported by evidence and would clearly amount to misconduct.

Using the applicable standard of review, we conclude, as should have the trial court, that the findings of fact and conclusions of law submitted by the appeals referee were supported by the evidence presented at the hearings. We therefore reverse the holding of the district court and order reinstatement of the determination of the appeals referee.

We turn now to the final issue, the propriety of the award of the district court of attorney's fees to respondent. The award was made pursuant to NRS 18.010(2). Since Williams is no longer the prevailing party, and should not have been before the district court, we feel that the award should be reversed on that ground alone.

Accordingly, the decision of the trial court is reversed, both

upon the merits and with regard to the attorney's fee; the ruling of the board of review is reinstated.

THOMPSON, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.