LINDA GARMAN, Appellant, *v.* STATE OF NEVADA, EMPLOYMENT SECURITY DEPARTMENT; STANLEY JONES, Executive Director; LAS VEGAS AREA CAMP FIRE COUNCIL, INC., Respondents.

No. 16829

December 15, 1986                    729 P.2d 1335

*Graves, Leavitt, Cawley & Koch,* Las Vegas, for Appellant.

*Crowell, Crowell, Crowell & Susich,* Carson City for Respondent Employment Security Department; *Steven Marzullo* and *William Phillips,* Las Vegas for Respondent Camp Fire Council.

---

[2]In light of this disposition, we deny as moot petitioner's motion for leave to proceed in proper person.

# OPINION

*Per Curiam:*

This action was originally brought when Garman filed a request for a hearing before the Appeals Referee of the Nevada Employment Security Department ("ESD") after receiving notice from ESD that her claim for unemployment benefits was denied. The referee entered a decision affirming the action of ESD denying Garman benefits. The Referee's decision was appealed to the Board of Review. The Board of Review adopted the findings of fact of the Referee and affirmed his decision.

The Board of Review decision was appealed to the district court by a petition for judicial review. On July 17, 1985, the trial court entered its order affirming the decision of the Board of Review and dismissing the petition.

Linda Garman was employed by Las Vegas Area Camp Fire Council, Inc. as a Program Director on January 23, 1984. Prior to being hired for the position, Garman told the Executive Director of Camp Fire that she could not work from 8:30 a.m. to 4:30 p.m. and that she could only work from 6:00 a.m. to 2:00 p.m. The Board of Directors of Camp Fire voiced their support for Garman and approved the individualized schedule.

Garman was employed 4½ months with the Camp Fire Council. During that time she experienced four changes in her immediate supervisor. During the tenure of each supervisor, Garman worked from 6:00 a.m. to 2:00 p.m.

On June 4, 1984, Garman received a memorandum from her new supervisor, Judith Dobson, stating that her new hours would be from 8:30 a.m. to 4:30 p.m. Garman reported to work the next day at 8:30 a.m. and had her performance evaluated by Judith Dobson. During this meeting, Dobson told Garman she would be required to work the newly assigned schedule. Garman told Dobson that she could not do this because of school and family commitments. Immediately after this meeting, Dobson suspended Garman without pay pending termination. The grounds for the suspension were insubordination and unprofessional conduct.

Subsequently, on June 8, 1984, Dobson officially terminated Garman for a long list of infractions. The sole justification for

denial of employment benefits, as determined by the Appeals Referee, was that Garman had committed misconduct by refusing to work the newly assigned schedule. The Appeals Referee deemed this to be the proximate cause of her termination. After unsuccessfully exercising her appellate rights at the Board of Review and at the district court, Garman filed the instant appeal.

The issue in this appeal is whether Garman's refusal to work reassigned hours constituted misconduct, as a matter of law, under the facts of the instant case.

The Appeals Referee's decision, which was upheld by the Board of Review, held that misconduct is defined as "a deliberate violation or a disregard of reasonable standards, carelessness or negligence showing substantial disregard of duties." Barnum v. Williams, 84 Nev. 37, 436 P.2d 219 (1968). In reviewing the decision of an administrative board, this court, like the district court, "is limited to the record below and to the determination of whether the board acted arbitrarily or capriciously." McCracken v. Fancy, 98 Nev. 30, 31, 639 P.2d 552, 553 (1982). If the agency determination is based on substantial evidence, the inquiry ends, for neither this court nor the district court is at liberty to substitute its judgment for that of the agency. *Id.*

When analyzing the concept of misconduct, the trier of fact must consider the legal definition, *Barnum,* in context with the factual circumstances surrounding the conduct at issue. Misconduct then becomes a mixed question of law and fact. Jones v. Rosner, 102 Nev. 215, 719 P.2d 805 (1986). Findings of misconduct must be given deference similar to findings of fact, when supported by substantial evidence in the lower court. *Id.* For example, the violation of a work rule, not accumulating excessive numbers of tardies/early leaves, was deemed not to be misconduct when viewed in light of the reasons for the early tardies/early leaves (illness, taking care of a terminally ill mother and appearing in court). Tynes v. Uniroyal Tire Company, 679 P.2d 1310 (Okla.Ct.App. 1984).

Nevada decisions have stated that the employee's conduct which prompted the termination must have an element of wrongfulness in order to constitute misconduct so as to prevent the terminated employee from receiving unemployment benefits. In Lellis v. Archie, 89 Nev. 550, 516 P.2d 469 (1973), this court held that a casino changemaker did not commit an act of misconduct by refusing to work at a less favorable work station when in the past the casino had used a rotation system to allow all changemakers to rotate from the worst to best stations. This court

held that "an objection to the change of stations by Lellis lacked any element of wrongfulness." *Id.* at 553, 516 P.2d at 471.

The activities of Garman and the circumstances of her employment must be analyzed to see if there is an element of wrongfulness, sufficient to support a determination of misconduct.

When Garman accepted employment with Las Vegas Area Camp Fire Council, Inc., she conditioned her employment on being able to work from 6:00 a.m. to 2:00 p.m. This was specifically approved by the Camp Fire Board over the objections of the existing Executive Director.

Many cases can be cited which indicate that refusing to work new hours other than those initially agreed upon under an employment relationship by contract or at will, does not constitute misconduct. *See* Wade v. Hurley, 515 P.2d 491 (Colo. Ct.App. 1973) (no misconduct found when an employee refuses to work a newly assigned Sunday shift); Trunkline Gas Co. v. Administrator, Dep't Employment Security, 364 So.2d 1365 (Va.Ct.App. 1978) (refusal to work a different shift was not misconduct when employer had allowed employee to work on a specific shift so that she could take care of her small child); St. Germain v. Adams, 377 A.2d 620 (N.H. 1977) (employee's refusal to work a new Sunday shift was not misconduct, even absent an employment contract); Hulse v. Levine, 393 N.Y.S.2d 386 (N.Y. 1977) (refusal to work unexpected overtime is not misconduct); In re Watson, 161 S.E.2d 1 (N.C. 1968) (refusal to work another shift, absent an agreement to do so, is not misconduct when an employee has a small child to care for); Neff v. Com. Unemployment Compensation Bd., 407 A.2d 936 (Pa.Comm.Ct. 1979) (refusal to work a new shift or on Saturdays was not wilfull misconduct).

While no express contract for employment existed between the parties in the instant case, nor was an employment contract mentioned in the findings of fact or argued to the court until Garman's final reply brief, her case is similar to the aforecited cases in which courts have found that a refusal to work newly assigned hours was not misconduct, even absent an agreement for specific working hours as a condition of employment. Garman's case is even stronger because she specifically conditioned her employment upon working an individualized schedule.

This court has ruled that when an employee receives a shift change and then responds by eventually not showing up for work, such evidence in the record substantiated the ruling of no entitlement to benefits. State Employment Sec. Dept. v. Weber, 100 Nev. 121, 676 P.2d 1318 (1984). *Weber* upheld the Board of Review's determination that the employee voluntarily left his job without good cause.

Garman's case, however, provides no basis for a determination of misconduct in refusing to work under a rearranged time schedule. Her original time schedule was specifically approved by the Camp Fire board of directors pursuant to employment negotiations. Garman was attending university classes which would have conflicted with the new schedule. She was contemplating taking more classes in the future. On the day she was directed to begin working from 8:30 a.m. to 4:30 p.m., she came to work at 8:30 a.m. and thereafter explained her problem in maintaining the new schedule.

When viewing the facts of this case with other similar decisions, it is certain that Garman's refusal to work new hours did not constitute misconduct. There was no substantial evidence of wrongfulness in Garman's actions. Therefore, the judgment of the lower court must be reversed.

ESD alleges that the refusal to work assigned hours is universally recognized as misconduct. Garman did not refuse to work assigned hours, she refused to acquiesce to a change in her condition of employment. Our holding is thus confined to the narrow facts and circumstances of this case and does not provide condonation for an employee's wrongful refusal to work according to time schedules fashioned by employers.

Since Garman's refusal to accept and work the revised time schedule invoked by her new supervisor did not constitute misconduct under the facts of record, we reverse the judgment of the district court and remand with instructions to order ESD to provide Garman her appropriate unemployment benefits.