ZEEV KOLNIK, Appellant, *v.* NEVADA EMPLOYMENT SECURITY DEPARTMENT, STATE OF NEVADA, STANLEY P. JONES, in His Capacity as Director of the Nevada Employment Security Department, LINDA K. LEE, in Her Capacity as Chairman, BOARD OF REVIEW, Nevada Employment Security Department and YELLOW CHECKER STAR, a Nevada Corporation, Respondents.

No. 25813

January 4, 1996                     908 P.2d 726

*Jon Sasser and David Olshan,* Nevada Legal Services, Las Vegas, for Appellant.

*Crowell, Susich, Owen & Tackes,* Carson City, and Law Offices of *Jeffrey L. Eskin,* Las Vegas, for Respondents.

# OPINION

By the Court, ROSE, J.:

Zeev Kolnik (Kolnik) worked as a driver for Yellow Checker Star Cab company (Yellow) from November 14, 1990, to December 28, 1992, when he was suspended pending investigation of his second traffic accident. On December 30, 1992, Kolnik was discharged for being in two "chargeable" accidents within three years.

Kolnik applied for unemployment benefits with the Nevada Employment Security Division (ESD). ESD denied Kolnik's application citing work-related misconduct. Kolnik appealed ESD's decision to its appeals referee who agreed with the initial ESD determination denying unemployment benefits. The appeals referee's decision was subsequently upheld by the ESD Board of Review (the Board). Kolnik then requested judicial review by the district court. The district court upheld the denial of unemployment benefits and dismissed the petition for judicial review. Kolnik now appeals to this court.

We conclude as a matter of law that the evidence in this case did not support a finding of work-related misconduct sufficient to warrant a denial of benefits.

## FACTS

Kolnik worked as a cab driver for Yellow from November 14, 1990, to December 28, 1992. He testified that there was "a lot of pressure" to perform well as a cab driver and that he worked ten to eleven hours a day, starting his shifts at approximately 7:00 a.m. On December 28, 1992, a work-related accident resulted in his suspension pending an investigation. Two days later, at a scheduled supervisors meeting, the supervisors voted to discharge Kolnik based on his involvement in two work-related car accidents.

The supervisors based their decision on a collective bargaining agreement between Yellow and the Industrial, Technical, and Professional Employee Division, National Maritime Union, AFL-CIO. The relevant portion of this agreement was also included in an employee handbook that Kolnik received when he was hired. The relevant portion states:

> No warning letter need be given to any driver before discharge if the cause of such action is:
>
> . . . .
>
> (22) Two chargeable accidents during any three (3) year period.

Mr. Wolf, Kolnik's supervisor, testified that traffic citations are not always determinative of a "chargeable" accident. Wolf also testified that if the insurance carrier determines the driver to be at fault and orders the company to pay damages, it is a "chargeable" accident.

Kolnik's first accident occurred on December 21, 1991. His cab struck another vehicle as he attempted to make a right hand turn at an intersection. Kolnik was cited for failing to yield on a right hand turn when the light was red. This citation was later reduced by the justice court to an illegal parking offense. Yellow's insurance carrier paid approximately $8,000 in damages and bodily injuries stemming from the accident.

After the first accident, Kolnik read and signed a statement which acknowledged that if he was involved in another "chargeable" accident within three years, he could be terminated. Kolnik's second accident occurred a year and a week later on December 28, 1992. The accident occurred at approximately 7:00 a.m., shortly after his shift started. It was raining that morning, and Kolnik was exiting a freeway off-ramp. Upon exiting, Kolnik failed to see that another car ahead of him was stopping or slowing down. When Kolnik did notice this, he applied the brakes to his cab. Despite this, his cab skidded and collided with the right rear of the other car. Kolnik attributed the skidding to the wet condition of the road. Yellow received a report from Kolnik immediately after the accident occurred. Damages to the cab totaled $340. Kolnik received a traffic citation for failure to use due care, which was subsequently "squelched" because Kolnik attended traffic school.

After his termination, ESD denied Kolnik unemployment benefits, based on the collective bargaining agreement and the citation for the second accident. ESD determined that Kolnik had engaged in work-related misconduct.

Kolnik appealed ESD's decision to an appeals referee. On March 12, 1993, the appeals referee determined that, pursuant to NRS 612.385[1], "[t]he preponderance of evidence establishes that the claimant was negligent in the performance of his duties on December 28. This action showed a disregard for the employer's best interest by causing damage to the employer's property.

---

[1]NRS 612.385 states:

> A person is ineligible for benefits for the week in which he has filed a claim for benefits, if he was discharged from his last or next to last employment for misconduct connected with his work, and remains ineligible until he earns remuneration in covered employment equal to or exceeding his weekly benefit amount in each of not more than 15 weeks thereafter as determined by the administrator in each case according to the seriousness of the misconduct.

Misconduct in connection with the work has been established."
The referee's decision noted that, in light of the prior citation and because the road was wet, Kolnik should have "redoubled" his efforts to ensure that he used more caution.

The Board upheld the referee's decision on March 26, 1993, adopting the referee's findings of fact and reasons for denial of unemployment benefits. Kolnik requested judicial review. On March 15, 1994, the district court upheld ESD's decision and dismissed Kolnik's petition for judicial review. Kolnik appealed to this court.

## DISCUSSION

In this case, Kolnik is not disputing his termination, merely the denial of his unemployment benefits due to the finding of misconduct. Our dissenting colleague, however, seems to have merged these two issues: misconduct warranting termination and misconduct warranting a denial of unemployment benefits. The only issue contested in the instant case is whether Kolnik's two accidents constituted willful misconduct sufficient to prevent his collection of benefits.

Under NRS 612.385, a person is ineligible for unemployment benefits if he has engaged in misconduct.

> The term misconduct has been defined by the Employment Security Department as follows: ". . . a deliberate violation or disregard on the part of the employee of standards of behavior which his employer has the right to expect. Carelessness or negligence on the part of the employee of such a degree as to show a substantial disregard of the employer's interests or the employee's duties and obligations to his employer are also considered misconduct connected with the work. . . ."

Barnum v. Williams, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968).[2] We have determined that ordinary negligence in isolated instances, or good faith errors in judgment or discretion, are excluded from the definition of misconduct. *Id.* at 41, 436 P.2d at 222.

When analyzing the concept of misconduct, the trier of fact must consider the legal definition in context with the factual circumstances surrounding the conduct at issue. Garman v. State, Employment Security Dep't, 102 Nev. 563, 565, 729 P.2d 1335, 1336 (1986). "Nevada decisions have stated that the employee's

---

[2]*Barnum* does not identify the source of the material quoted.

conduct which prompted the termination must have an element of wrongfulness in order to constitute misconduct so as to prevent the terminated employee from receiving unemployment benefits." *Id.*

Whether Kolnik's negligence was of such a nature as to constitute willful misconduct is a question of law. Seyler v. Com., Unemp. Comp. Bd. of Review, 481 A.2d 1262, 1264 (Pa. Commw. Ct. 1984). Although the court may decide pure questions of law without giving deference to an agency's determination, an agency's conclusions of law which are closely related to an agency's view of the facts are entitled to deference and should not be disturbed if the court determines that they are supported by substantial evidence. SIIS v. Khweiss, 108 Nev. 123, 126, 825 P.2d 218, 220 (1992). Substantial evidence is that which a reasonable mind could find adequate to support a conclusion. State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986).

Relying on *Barnum* as the standard for evaluating misconduct, the referee concluded that Kolnik's actions showed a disregard for Yellow's best interest by causing damage to its property. However, we conclude that the necessary element of wrongfulness is lacking and that the mere counting of accidents cannot justify denial of benefits. *Cf.* Continental Oil Company v. Bd. of Review of Indus. Comm., 568 P.2d 727 (Utah 1977) (declining to conclude that a claimant was not entitled to benefits based on misconduct after being involved in three accidents, including two for driving under the influence of alcohol).

Nothing in the record implies that Kolnik acted intentionally or recklessly in either of the accidents. With the amount of driving Kolnik was doing as a cab driver, we cannot conclude that Kolnik's second accident demonstrated carelessness or negligence to the extent required to find an element of wrongfulness and therefore misconduct. Accordingly, we conclude that the appeals referee abused her discretion in finding that Kolnik had engaged in work-related misconduct sufficient to deny unemployment benefits.

Based on our disposition of this appeal, we find it unnecessary to reach the merits of Kolnik's other arguments.

## CONCLUSION

We conclude that in this case two accidents did not constitute misconduct sufficient to deny employment benefits and that sub-

stantial evidence did not support the conclusion reached by the appeals officer. Accordingly, we reverse the district court's order denying benefits.

STEFFEN, C. J., and YOUNG and SPRINGER, JJ., concur.

SHEARING, J., dissenting:

I would affirm the order of the district court denying the petition for judicial review of the agency decision denying unemployment benefits. This court has no sound justification for concluding as a matter of law, that two accidents in which a taxicab driver was involved were not misconduct. This court is not to substitute its judgment of the evidence for that of the administrative agency. State, Dep't of Mtr. Vehicles v. Beckstead, 107 Nev. 456, 458, 813 P.2d 995, 996 (1991). The majority recognizes this rule too, and therefore couches its opinion in terms of lack of substantial evidence. However, the majority's own recitation of the evidence and Kolnik's testimony show that there was substantial evidence from which a trier of fact could conclude that the accidents were the result of misconduct.

This court stated in Fremont Hotel v. Esposito, 104 Nev. 394, 397, 760 P.2d 122, 123-24 (1988):

> Misconduct may be established by "a deliberate violation or disregard on the part of the employee of standards of behavior which his employer has a right to expect." Barnum v. Williams, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968).

It should be clear that an employer of a professional driver has a right to expect that that professional driver will drive carefully and will not negligently cause automobile accidents resulting in damage to the employer. Even the public has a right to expect careful professional drivers, not negligent ones. The majority appears to add a requirement that a taxicab driver must either recklessly or intentionally cause an automobile accident before the accident can be characterized under NRS 612.385 as misconduct connected with his work. There is no basis for such an added requirement, especially for a professional driver. The definition quoted by the majority supports the finding of misconduct in the circumstances here since it states:

> "Carelessness or negligence on the part of the employee of such a degree as to show a substantial disregard of the employer's interests or the employee's duties and obligations to his employer are also considered misconduct connected with the work. . . ."

Barnum v. Williams, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968).

In this case, there was evidence that Kolnik's negligence

caused both accidents resulting in thousands of dollars of damage to the employer. This demonstrates substantial disregard for the employer's best interests. The collective bargaining agreement under which Kolnik was working provided that the conduct was sufficient cause for discharge. Two chargeable accidents within three years were essentially defined by the collective bargaining agreement as misconduct sufficient for discharge. Kolnik had two chargeable accidents within nearly one year. This evidence should be sufficient for the appeals officer to base its finding of misconduct under NRS 612.385.

In *Fremont* this court stated the appropriate standard as follows:

> [B]oth this court and the district court are restricted in the review of the administrative agency proceedings. The district court does not hold a trial de novo.
>
> When analyzing the concept of misconduct, the trier of fact must consider the legal definition, *Barnum*, in context with the factual circumstances surrounding the conduct at issue. Misconduct then becomes a mixed question of law and fact. Jones v. Rosner, 102 Nev. 215, 719 P.2d 805 (1986). Findings of misconduct must be given deference similar to findings of fact, when supported by substantial evidence in the lower court. *Id.*

104 Nev. at 397, 760 P.2d at 124, quoting Garman v. State, Employment Security Dep't, 102 Nev. 563, 565, 760 P.2d 1335, 1336 (1986).

This court has no basis for overturning the administrative agency's decision.