OPINION

Per Curiam:

In this appeal, we clarify that when an employer asserts that a former employee’s misconduct disqualifies her from receiving unemployment benefits, the employer bears the burden of demonstrating that the employee’s discharge was due to disqualifying misconduct. The employer may do this by making an initial showing of willful misconduct, related to the employment. To avoid being disqualified from receiving benefits, the former employee must then demonstrate that the nature of the misconduct was not of the type for which disqualification is warranted.
In this case, the administrative agency failed to appropriately determine whether the employer had met its burden to show that its former employee was discharged for willful misconduct with *1443 regard to her unauthorized absences. Accordingly, we reverse the district court’s order denying judicial review of the administrative decision awarding unemployment compensation, and we remand this matter to the district court with instructions that it, in turn, remand the matter to the administrative agency for further proceedings with regard to this issue.

FACTS AND PROCEDURAL HISTORY

Respondent Harriet Bundley was discharged from her position with appellant Clark County School District as an “in-house suspension’ ’ teacher. According to the termination notice, Bundley was discharged for several general reasons and, specifically, for being “absent without leave” on eight occasions — January 18, 19, and 20, 2005, and February 9, 10, 17, 18, and 24, 2005 — for a total of seven full days, despite having previously received relevant admonishments.
Thereafter, Bundley filed for unemployment benefits, which she was granted by respondent Employment Security Division of the Nevada Department of Employment, Training, and Rehabilitation. The school district challenged Bundley’s right to receive those benefits, however, alleging that Bundley was discharged for misconduct in connection with her work. Specifically, the school district indicated that Bundley had “excessive attendance” problems, of which she had been warned could lead to job loss.
Before and at the subsequent administrative hearing, the school district submitted as evidence four written admonishments that Bundley had received in the fall of 2004, reminding her that she (1) had been absent five days since the beginning of the school year, and late once; (2) had in some instances notified the wrong person of her absences, and was instead required to report any absences to, and obtain approval therefor from, the principal or assistant principal; and (3) had, apparently before May 26, 2004, experienced some problems with excessive absences and/or absences taken before a sufficient amount of leave had accrued. While the school’s principal stated, during the hearing, that Bundley had been discharged for attendance problems, her testimony focused on one precipitating factor: Bundley’s alleged failure to report her absences on February 17, 18, and 24, 2005. With regard to this issue, the principal relayed that neither herself, nor the assistant principal or school secretaries, recalled Bundley having called in on those three days.
Bundley, on the other hand, testified that she had called in to report those absences and had spoken once to the assistant principal and twice to the principal. She also testified that she was absent because she had to see a doctor about her broken foot and, on February 24th, to take care of her ill daughter, whose illness was apparently the result of a continuing medical condition of which the school was aware. Bundley averred that she had applied, *1444 or had planned to apply, for additional sick leave from the school’s sick leave bank. Finally, she indicated that she was willing to submit documentation to support her claims as to having called the school on the days in question, broken her foot, and-applied for leave from the sick leave bank.
After the hearing concluded, an appeals referee determined that the school principal’s assertions that Bundley had not phoned to report her absences were more credible. The appeals referee thus concluded that Bundley was discharged because of attendance problems and her failure to notify her employer that she would be absent on February 17, 18, and 24, in contravention of the school’s policy. According to the appeals referee, Bundley’s failure to notify her employer of her inability to report to work on those three days constituted misconduct disqualifying her from receiving benefits under NRS 612.385, which provides that an employee who is discharged for work-related misconduct may not receive benefits. Bundley administratively appealed.
After reviewing the evidence that had been presented to the appeals referee, the Board of Review reversed the appeals referee’s decision, determining that Bundley had credibly testified that her absence on the days in question was due to her and her daughter’s illnesses and that she had timely notified her supervisor of those absences. Noting that Bundley was admittedly absent without leave but that nothing appeared in the record to show that Bundley had failed to report her absences, the Board concluded that, for unemployment benefits purposes, mere absence resulting from illness is not disqualifying misconduct.
The school district’s subsequent petition for judicial review was denied, and consequently, it appeals.

DISCUSSION

When reviewing an administrative unemployment compensation decision, this court, like the district court, examines the evidence in the administrative record to ascertain whether the Board acted arbitrarily or capriciously, thereby abusing its discretion.[1] With regard to the Board’s factual determinations, we note that the Board conducts de novo review of appeals referee decisions.[2] Therefore, when considering the administrative record, the Board acts as “an independent trier of fact,” and the Board’s factual findings, when supported by substantial evidence, are conclusive.[3]
*1445 Accordingly, we generally review the Board’s decision to determine whether it is supported by substantial evidence, which is evidence that a reasonable mind could find adequately upholds a conclusion.[4] In no case may we substitute our judgment for that of the Board as to the weight of the evidence.[5] Thus, even though we review de novo any questions purely of law,[6] the Board’s fact-based legal conclusions with regard to whether a person is entitled to unemployment compensation are entitled to deference.[7]

Disqualifying misconduct carries an element of wrongfulness

We have recognized that the protective purpose behind Nevada’s unemployment compensation system is to provide “temporary assistance and economic security to individuals who become involuntarily unemployed.”[8] To further this purpose, the unemployment compensation law, NRS Chapter 612, presumes that an employee is covered by the system and does not allow the employee to waive his or her rights under the system.[9] Because the system is not designed to provide assistance to those persons who are deemed to have become voluntarily unemployed, however, NRS 612.385 disqualifies a person from receiving unemployment benefits “if [she] was discharged from . . . employment for misconduct connected with [her] work.”
Disqualifying misconduct occurs when an employee deliberately and unjustifiably violates or disregards her employer’s reasonable policy or standard,[10] or otherwise acts in such a careless or negligent manner as to “ ‘show a substantial disregard of the employer’s *1446 interests or the employee’s duties and obligations to [her] employer.’ ”[11] As we have previously suggested, because disqualifying misconduct must involve an “element of wrongfulness,”[12] an employee’s termination, even if based on misconduct, does not necessarily require disqualification under the unemployment compensation law.[13] Instead, determining whether misconduct disqualifies a person from receiving unemployment benefits “requires a separate and distinct analysis”:[14] “[w]hen analyzing the concept of misconduct, the trier of fact must consider the legal definition [of disqualifying misconduct] in context with the factual circumstances surrounding the conduct at issue.”[15] Generally, then, an employee’s absence will constitute misconduct for unemployment compensation purposes only if the circumstances indicate that the absence was taken in willful violation or disregard of a reasonable employment policy (i.e., was unjustified and, if appropriate, unapproved),[16] or lacked the appropriate accompanying notice.[17]
As the determination of whether Bundley’s acts constituted misconduct is, thus, a fact-based question of law, the Board’s decision is entitled to deference.[18] Nevertheless, the school district essen *1447 tially argues that the Board overlooked two ways in which Bundley engaged in disqualifying misconduct: (1) she was admittedly absent eight times without available leave, and she failed to submit evidence documenting that her absences were justified or approved, or that she had even applied for additional leave; and (2) she failed to demonstrate that she had timely notified the school that she would be absent on February 17, 18, and 24, despite being aware of the school’s policy that she do so.

The employer bears the burden of demonstrating disqualifying misconduct

Preliminarily, we note that both of the school district’s arguments arise from the same flawed premise — that Bundley was responsible for demonstrating that her absences did not constitute misconduct. Bundley, however, did not bear the burden to demonstrate that she had not committed disqualifying misconduct. Instead, the school district carried the burden to show that Bund-ley had engaged in conduct disqualifying her from receiving unemployment benefits under NRS 612.385.
As several other jurisdictions have noted in similar contexts, the discharged employee is not always aware of the circumstances surrounding her dismissal, but rather, the employer is in the “ ‘unique position to know the reasons for [the] employee’s discharge.’”[19] Further, ‘“access to the facts relating to that discharge will be more readily obtained by the employer than the employee.’ ”[20] The practical result is that the employer can usually more easily prove *1448 employee misconduct than the employee can disprove the employer’s assertion that she engaged in such misconduct.[21]
For these reasons, and in light of the unemployment compensation system’s protective purposes, as described above, we conclude that in Nevada, if an employer asserts that a former employee is disqualified from receiving unemployment benefits because that employee was discharged due to misconduct, the employer bears the burden of so proving by a preponderance of the evidence.[22] Once the employer makes an initial showing of willful misconduct, however, the burden shifts to the former employee to demonstrate that the conduct cannot be characterized as misconduct within the meaning of NRS 612.385, for example, by explaining the conduct and showing that it was reasonable and justified under the circumstances.[23]

Mere absence without leave is not disqualifying misconduct, but an employer may meet its initial burden by demonstrating excessive unauthorized absences

The school district asserts that, because the Board recognized that absence without leave is misconduct leading to termination, it necessarily erred when it determined that no disqualifying misconduct occurred. But, as noted above, whether Bundley’s ab *1449 sences disqualified her from receiving unemployment benefits requires a separate analysis in light of the definition of misconduct pertaining to the unemployment compensation law — Bundley’s conduct must have been in willful violation or disregard of the school’s standards.
In this vein, the school district argues that Bundley’s seven days of absences were unauthorized and in direct contravention of school policy and prior school directives. With respect to the latter assertion, that Bundley’s absences violated school policy and directives, the record does not contain the school district’s absence policy, and the directives merely order Bundley to “[c]ome to work as assigned,” indicating that, in the past, she had improperly used leave that had not yet accrued and had not contacted the right person to report her absences.[24] Accordingly, it is not clear that Bund-ley’s 2005 absences violated any policy or directive.
Moreover, even if Bundley’s absences were in violation of school policy, the school district submitted no evidence to contradict Bundley’s testimony as to the reasons for the three absences discussed during the hearing, which the Board concluded showed that the absences were justified. The school district failed to contradict this testimony even though it acknowledged that, at the time she was discharged, Bundley had informed the school authorities that at least some of the absences were the result of her daughter’s illness.[25] Accordingly, the school district failed to show that Bundley, whom the law presumes is an employee covered by the system, deliberately and unjustifiably violated any school absence policy, and the Board’s decision with regard to the alleged policy violations is based on substantial evidence.[26]
*1450 With respect to the school district’s former assertion, that Bundley was absent without authorization eight times within approximately one month, however, it is unclear whether the school district met its initial burden. As recognized by the Supreme Court of Florida, when an employee is absent without authorization, that conduct is inherently detrimental to the employer’s interests in efficiently operating its business.[27] And if the unauthorized absences are many, their excessiveness tends to show a willful disregard of such interests. Accordingly, if an employer shows a clear pattern of unauthorized absenteeism, a presumption of willful misconduct arises, which can be rebutted only if the former employee shows that the absences did not constitute misconduct within the meaning of NRS 612.385.[28]
Here, the Board failed to consider whether Bundley’s admitted-to unauthorized absences were excessive, and thus whether the school district met its initial burden to prove willful misconduct.[29] Further, although Bundley then testified that as to the nonvoluntary nature of the three absences on which the school district based its arguments during the administrative hearing, it is unclear whether the other five absences in 2005 were justifiable, as they were not discussed during the administrative hearing. Since neither the appeals referee nor the Board adequately considered this issue, we reverse the district court’s decision and remand this matter with instructions that the court remand the matter to the Board for further proceedings with respect to this issue.[30]

When conflicting testimony exists, misconduct is not necessarily demonstrated by an alleged failure to report absences

Regarding the allegation that Bundley failed to notify the school district of her last three absences, we recognize that even if *1451 Bundley’s absences themselves do not constitute misconduct, any unreasonable failure on her part to notify the school that she was going to be absent could show a substantial disregard of her employer’s interests so as to disqualify her from receiving unemployment benefits under NRS 612.385.[31] The school district, however, did not show that Bundley failed to timely report her absences. Although the school’s principal initially testified that Bundley had not called in on February 17, 18, and 24, she later testified that she could not recall whether Bundley had called, and that neither the assistant principal nor the school secretaries could remember any calls from Bundley on those days, either. Bundley, on the other hand, insisted that she had telephoned on each of the three days in question and had spoken once with the assistant principal and twice with the principal. Accordingly, as the Board was free to rely on Bundley’s testimony,[32] its determination that Bundley is not disqualified due to any failure to notify her employer is entitled to deference.

CONCLUSION

As the employer challenging its former employee’s right to receive unemployment benefits, under NRS 612.385’s disqualification for misconduct provision, the school district bore the burden *1452 of demonstrating, by a preponderance of the evidence, that Bund-ley committed the alleged misconduct. As the school district did not show that Bundley engaged in misconduct disqualifying her from receiving unemployment benefits with regard to school policy and directive violations or with respect to non-notification, the Board’s determination that Bundley was not disqualified from receiving benefits on these grounds is based on substantial evidence and is thus entitled to deference. Because the appeals referee and the Board failed to adequately consider the school district’s assertion that disqualification was warranted based on Bundley’s excessive unauthorized absences, however, we reverse the district court’s order denying judicial review, and we remand this matter to the district court so that it may remand the matter to the Board for further proceedings consistent with this opinion.

 State, Emp. Sec. Dep’t v. Holmes, 112 Nev. 275, 279, 914 P.2d 611, 614 (1996); see also NRS 233B.135(3).

 Kraft v. Nev. Emp. Sec. Dep’t, 102 Nev. 191, 193-94, 717 P.2d 583, 585 (1986).

 State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 609, 729 P.2d 497, 499 (1986); see also NRS 612.530(4) (providing that, “[i]n any judicial *1445 proceedings ... , the finding of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, is conclusive”); Black’s Law Dictionary 105-06 (8th ed. 2004) (defining “appeal de novo,” generally, as a procedure in which the reviewing body considers the lower tribunal’s record but reviews the evidence and law without deference to the lower tribunal’s rulings).

 Kolnik v. State, Emp. Sec. Dep’t, 112 Nev. 11, 16, 908 P.2d 726, 729 (1996).

 Holmes, 112 Nev. at 279, 914 P.2d at 614.

 Kolnik, 112 Nev. at 16, 908 P.2d at 729.

 Id.

 State, Emp. Sec. v. Reliable Health Care, 115 Nev. 253, 257, 983 P.2d 414, 417 (1999).

 See id.; NRS 612.700.

 Holmes, 112 Nev. at 282, 914 P.2d at 616 (recognizing that an employee’s deliberate violation of “a company rule reasonably designed to protect the legitimate business interests of his employer” may constitute disqualifying misconduct (internal quotations omitted)); Kolnik, 112 Nev. at 15-16, *1446 908 P.2d at 728-29 (noting that, essentially, before unemployment benefits may be denied for misconduct, it must be shown that the act or acts leading to termination involved “an element of wrongfulness” (internal quotations omitted)).

 Kolnik, 112 Nev. at 15, 908 P.2d at 729 (quoting Barnum v. Williams, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968)); see also Holmes, 112 Nev. at 282, 914 P.2d at 616 (recognizing that the repetition of acts may show willfulness) (citing Clevenger v. Employment Security Dep’t, 105 Nev. 145, 150, 770 P.2d 866, 868 (1989)).

 Kolnik, 112 Nev. at 15-16, 908 P.2d at 729 (quoting Garman v. State, Employment Security Dep’t, 102 Nev. 563, 565, 729 P.2d 1335, 1336 (1986)).

 Id. at 15, 908 P.2d at 728 (recognizing that misconduct warranting termination and misconduct warranting a denial of unemployment benefits are two separate issues).

 Div. Emp. Sec. v. Gardner-Denver Mach., 941 S.W.2d 13, 15 (Mo. Ct. App. 1997).

 Kolnik, 112 Nev. at 15, 908 P.2d at 729; see also Gardner-Denver Mach., 941 S.W.2d at 15.

 See, e.g., Hilton Hotels, 102 Nev. at 608, 729 P.2d at 499; Kraft, 102 Nev. at 194, 717 P.2d at 585; State, Emp. Sec. Dep't v. Evans, 111 Nev. 1118, 1119, 901 P.2d 156, 156-57 (1995) (recognizing that work absences will disqualify a person from receiving unemployment benefits only if the absences fall within the description of misconduct); Gardner-Denver Mach., 941 S.W.2d at 16 (“Violation of an employer’s absence policy, which may be adequate cause for dismissal, is not, standing alone, necessarily a finding of misconduct connected with the work, so as to deny unemployment benefits.”).

 Kraft, 102 Nev. at 194, 717 P.2d at 585.

 Id.

 Bean v. Montana Bd. of Labor Appeals, 965 P.2d 256, 260-61 (Mont. 1998) (quoting Parker v. St. Maries Plywood, 614 P.2d 955, 959 (Idaho 1980), and noting that “a majority of states require an employer to bear this burden” of proving misconduct); see also Kivalu v. Life Care Centers of America, 127 P.3d 165, 167 (Idaho 2005) (“The burden of proving the alleged misconduct is on the employer.”); Business Ctrs. v. Labor & Ind. Rel. Com’n, 743 S.W.2d 588, 589 (Mo. Ct. App. 1988) (“[T]he employer has the burden of proving misconduct . . . .” (citing Clemons v. Blache, 501 So. 2d 1020, 1022 (La. Ct. App. 1987); Santos v. Director of Div. of Employment Sec., 498 N.E.2d 118, 120 (Mass. 1986); Engler v. Marshall Turkey Plant, 409 N.W.2d 570, 572-73 (Minn. Ct. App. 1987); Looney v. Unemp. Comp. Bd. of Review, 529 A.2d 612, 613-14 (Pa. Commw. Ct. 1987)); Shiazza v. Com., Unemploy. Comp. Bd. of R., 420 A.2d 33, 34 (Pa. Commw. Ct. 1980).

 Bean, 965 P.2d at 261 (quoting Parker, 614 P.2d at 959). For example, in the underlying matter, Bundley’s termination notice indicated that she was discharged for being absent without leave. The hearing notice stated merely that the issue to be decided was whether Bundley was discharged for misconduct. Accordingly, Bundley was not fully aware that the school district would assert that her alleged failures to notify the school of her absences on February 17, 18, and 24 were causes for her discharge. We note, too, that NRS *1448 233B.121(2)(d) requires the hearing notice to include “[a] short and plain statement of the matters asserted” and provides that, if the notice merely states the relevant issues, a party may obtain by request “a more definite and detailed statement.” See also NAC 612.225(3) (limiting the hearing’s scope “to issues identified in the notice of hearing, unless the parties are provided with proper notice and the opportunity to request a continuance with respect to other issues”).

 Bean, 965 P.2d at 261.

 See Dalton Brick & Tile Company v. Huiet, 115 S.E.2d 748, 750 (Ga. Ct. App. 1960) (stating that an employer seeking to deny unemployment benefits to an otherwise eligible employee under an excepting clause must prove that the excepting clause applies “by a preponderance of the evidence”); Charbonnet v. Gerace, 457 So. 2d 676, 679 (La. 1984) (same); Lumpkin v. North Central Airlines, Inc., 209 N.W.2d 397, 400 (Minn. 1973) (providing that the employer must establish disqualifying misconduct for unemployment benefits purposes by the “greater weight of the evidence”).

 See, e.g., Mason v. Load King Mfg. Co., 758 So. 2d 649, 654 (Fla. 2000); Cargal v. Review Bd. of Ind. Empl. Sec. Div., 428 N.E.2d 85, 87 (Ind. Ct. App. 1981); Kelly v. Unemploy. Comp. Bd. of Review, 747 A.2d 436, 438-39 (Pa. Commw. Ct. 2000); Virginia Employment Com’n v. Gantt, 376 S.E.2d 808, 811 (Va. Ct. App. 1989), opinion adopted on en banc rehearing, 385 S.E.2d 247 (Va. Ct. App. 1989).

 Bundley, when testifying before the appeals referee, indicated that the school’s policy was to allow up to five consecutive days’ absence before any action to discharge the employee was taken, which did not occur here.

 See Croy v. Division of Employment Security, 187 S.W.3d 888, 893 (Mo. Ct. App. 2006) (recognizing that absences due to illness or emergency are generally not considered willful misconduct, especially when reported, and that when the employer fails to provide evidence of its relevant policies and the alleged misconduct, including whether any claimed illness existed, no disqualification is warranted); Randolph M. James, P.C. v. Lemmons, 629 S.E.2d 324, 332 (N.C. Ct. App. 2006) (noting that an employee has little control over absences caused by illness, so that disqualification may not be warranted therefor). We note that the record contains no indication that the school district even requested documentation as to Bundley’s or her daughter’s illnesses and doctor’s appointments. See generally NAC 612.225(2) (providing that, upon showing necessity, a party may obtain a subpoena).

 See Wright v. State, Dep't of Motor Vehicles, 121 Nev. 122, 125, 110 P.3d 1066, 1068 (2005) (recognizing that substantial evidence can be “ ‘inferentially shown by [a] lack of [certain] evidence’ ” (quoting City of Reno v. Estate of Wells, 110 Nev. 1218, 1222, 885 P.2d 545, 548 (1994))).

 Mason, 758 So. 2d at 653.

 Id. at 654 (noting that, before the burden will be shifted to the former employee, the employer must present “satisfactory proof... of a serious and identifiable pattern of excessive absenteeism”); id. at 656 (pointing out that the employer’s burden of proving excessive unauthorized absenteeism is a “heavy” one).

 We note that Bundley submitted evidence showing that she joined the sick leave bank the following school year, and she indicated that she thought that she would be able to obtain additional leave therefrom to cover her January and February 2005 absences. In reviewing this issue on remand, these assertions should also be considered in determining whether the school district met its burden.

 See, e.g., id. at 655-56 (concluding that the employer’s proof that the former employee had four absences, four late arrivals, and one early quitting *1451 time was sufficient to show willful misconduct, but discussing, with approval, the trial court’s conclusion in Blumetti v. Unemployment Appeals Com’n, 675 So. 2d 689, 691 (Fla. Dist. Ct. App. 1998), that the employer failed to meet its initial burden of showing excessive absenteeism when some of the absences relied upon where not shown to be the former employee’s fault); see also Tallahassee Primary Care v. Florida UAC, 930 So. 2d 824 (Fla. Dist. Ct. App. 2006) (concluding that the employer presented competent evidence of excessive and unauthorized absences, but that the former employee had rebutted the presumption of misconduct arising therefrom by showing that her absences were due, among other things, to her sick child).

 Kraft, 102 Nev. at 194, 717 P.2d at 585.

 The school district also argues that the Board’s decision was arbitrary and capricious because, even though it considered no additional evidence, it came to the opposite credibility determinations as did the appeals referee, without any grounds on which to do so. See Reno v. Estate of Wells, 110 Nev. 1218, 1222, 885 P.2d 545, 548 (1994) (recognizing that “arbitrary” and “capricious” have been defined, in the governmental action context, as “ ‘an apparent absence of any grounds or reasons for the decision’ ” (quoting Tighe v. Von Goerken, 108 Nev. 440, 442-43, 833 P.2d 1135, 1136 (1992))). As noted above, however, the Board is free, during its de novo review, to review the evidence without deferring to the appeals referee’s conclusions. Further, the Board’s decision to afford the school’s principal’s testimony less weight was not unreasonable; although Bundley asserted that she had phoned the school to report her absences, the principal merely could not recall whether she had received any calls, and the school district did not provide any additional evidence demonstrating that Bundley did not call. See, e.g., Hilton Hotels, 102 Nev. at 609, 729 P.2d at 499 (noting that the Board was free to assign probative values to testimony adduced during a hearing).