132 Nev., Advance Opinion 18

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA
EMPLOYMENT SECURITY DIVISION;
RENEE OLSON, IN HER CAPACITY AS
ADMINISTRATOR OF THE
EMPLOYMENT SECURITY DIVISION;
AND KATIE JOHNSON, IN HER
CAPACITY AS CHAIRPERSON OF THE
EMPLOYMENT SECURITY DIVISION
BOARD OF REVIEW,
Appellants,
vs.
CALVIN STEVEN MURPHY,
Respondent.

No. 65681

FILED

MAR 3 1 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a petition for judicial review in an unemployment benefits matter. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

*Reversed.*

J. Thomas Susich and Neil A. Rombardo, ~~Joseph L. Ward, Jr., Senior Legal Counsel,~~ State of Nevada Employment Security Division, Carson City,
for Appellants.

Nevada Legal Services, Inc., and Ron Sung and I. Kristine Bergstrom, Las Vegas,
for Respondent.

_____

BEFORE THE COURT EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

5/3/16: Corrected per letter to publishers. CJ

16-10009

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we are asked to consider whether an employee who is terminated because he or she misses work due to incarceration has committed disqualifying misconduct pursuant to NRS 612.385 and is thus not entitled to unemployment benefits. Based on the plain language of the statute and narrowly construing *State, Employment Security Department v. Evans*, 111 Nev. 1118, 901 P.2d 156 (1995), we conclude that an employee who is terminated as a result of missing work due to incarceration, and who is subsequently convicted of a crime, is not eligible for unemployment benefits.

## FACTS AND PROCEDURAL HISTORY

Respondent Calvin Murphy was employed by Greystone Park Apartments. He was arrested for possession of stolen property and could not afford his $40,000 bail. He eventually pleaded guilty and was incarcerated for approximately one year. Murphy was fired by Greystone because of his unexcused absences caused by his incarceration. Appellant Nevada Employment Security Division's (ESD) claims adjudicator, the appeals referee, and the ESD Board of Review all determined that Murphy committed disqualifying misconduct pursuant to NRS 612.385 and was therefore not entitled to unemployment benefits. Specifically, the appeals referee found that Murphy admitted to the criminal conduct that caused his incarceration, and the Board of Review adopted that finding.

Murphy petitioned the district court for judicial review, and the court reversed the ESD Board of Review's decision. The district court reasoned that the only misconduct connected with work was Murphy's

absenteeism, which was insufficient as a matter of law to deny benefits. We disagree and thus reverse.

## DISCUSSION

*Standard of review*

Like the district court, we review an administrative unemployment compensation decision "to ascertain whether the Board acted arbitrarily or capriciously, thereby abusing its discretion." *Clark Cty. Sch. Dist. v. Bundley*, 122 Nev. 1440, 1444, 148 P.3d 750, 754 (2006). "[T]he Board acts as an independent trier of fact," and its factual findings are conclusive when supported by substantial evidence. *Id.* (internal quotations omitted). "Substantial evidence is that which a reasonable mind could find adequate to support a conclusion." *Kolnik v. Nev. Emp't Sec. Dep't*, 112 Nev. 11, 16, 908 P.2d 726, 729 (1996). Additionally, "fact-based legal conclusions with regard to . . . unemployment compensation [issues] are entitled to deference." *Bundley*, 122 Nev. at 1445, 148 P.3d at 754. However, purely legal questions, including issues of statutory construction, are reviewed de novo. *Id.*; *see also Sonia F. v. Eighth Judicial Dist. Court*, 125 Nev. 495, 499, 215 P.3d 705, 707 (2009).

*Murphy's absenteeism due to his incarceration was disqualifying misconduct*

Unemployment compensation in Nevada is designed to ease the economic burden on those who are "unemployed through no fault of their own." *Anderson v. State, Emp't Sec. Div.*, 130 Nev., Adv. Op. 32, 324 P.3d 362, 368 (2014) (internal quotations omitted); *see also* A.B. 93, 38th Leg. (Nev. 1937) (Nevada's original bill enacting the unemployment insurance statute). A person is not disqualified from receiving unemployment benefits simply because he or she is terminated:

Supreme Court

OF

Nevada

(O) 1947A

3

Disqualifying misconduct occurs when an employee deliberately and unjustifiably violates or disregards h[is] employer's reasonable policy or standard, or otherwise acts in such a careless or negligent manner as to show a substantial disregard of the employer's interests or the employee's duties and obligations to [his] employer. As we have previously suggested, because disqualifying misconduct must involve an element of wrongfulness, an employee's termination, even if based on misconduct, does not necessarily require disqualification under the unemployment compensation law.

*Bundley*, 122 Nev. at 1445-46, 148 P.3d at 754-55 (internal footnotes and quotations omitted).

Three statutes can disqualify former employees from receiving unemployment benefits.[1] The pertinent statute here is NRS 612.385, and it provides that "[a] person is ineligible for benefits . . . if he or she was discharged . . . for misconduct connected with the person's work."

Here, Murphy's employment was terminated because he failed to show up at work due to his incarceration. We were presented with a similar issue in *Evans* and held that the terminated employee was eligible for unemployment benefits. 111 Nev. at 1119, 901 P.2d at 156. In so holding, we determined that because the employee's unavailability to "work was due to her pretrial incarceration which was predicated on her inability to obtain bail, not her criminal conduct," *id.*, the employee's absence was neither deliberate nor voluntary, and we noted that the

---

[1]Two of those statutes are not germane to this appeal: NRS 612.380 applies when an employee voluntarily leaves without good cause or to seek other employment, and NRS 612.383 applies when an employee is discharged for crimes committed in connection with employment.

employee had dutifully notified the employer of the situation. *Id.* at 1119, 901 P.2d at 156-57.

Murphy urges this court to read *Evans* broadly and create a bright-line rule that no disqualifying misconduct occurs when an employee cannot attend work due to incarceration and the employee dutifully notifies the employer. We decline to do so and conclude that *Evans* must be narrowed and clarified to align with NRS 612.385's plain language.[2]

---

[2]If we were to read *Evans* broadly, as Murphy proposes, Nevada may become the only state that widely grants incarcerated claimants unemployment benefits, regardless of fault or conviction. For example, New Jersey has determined that incarceration, regardless of fault, results in disqualification from benefits. *See Fennell v. Bd. of Review*, 688 A.2d 113, 116 (N.J. Super. Ct. App. Div. 1997) (finding that "[n]o matter how sympathetic the facts," a claimant who lost his job because of incarceration is disqualified from benefits under a voluntary leaving statute). Other states have decided that claimants are disqualified when at fault or culpable for their incarceration under either a misconduct or voluntary quitting statute. *See, e.g., Weavers v. Daniels*, 613 S.W.2d 108, 110 (Ark. Ct. App. 1981) (finding that a failure to attend work due to fault-based incarceration is disqualifying misconduct); *Hillsborough Cty., Dep't of Emergency Med. Servs. v. Unemp't Appeals Comm'n*, 433 So. 2d 24, 25 (Fla. Dist. Ct. App. 1983) (same); *Carter v. Caldwell*, 261 S.E.2d 431, 432 (Ga. Ct. App. 1979) (same); *Grimble v. Brown*, 171 So. 2d 653, 656 (La. 1965) (same); *Smith v. Am. Indian Chem. Dependency Diversion Project*, 343 N.W.2d 43, 45 (Minn. Ct. App. 1984) (same); *Stanton v. Mo. Div. of Emp't Sec.*, 799 S.W.2d 202, 205 (Mo. Ct. App. 1990) (same); *Weems v. Unemp't Comp. Bd. of Review*, 952 A.2d 697, 699 (Pa. Commw. Ct. 2008) (same); *see also Bivens v. Allen*, 628 So. 2d 765, 767 (Ala. Civ. App. 1993) (determining that a failure to attend work due to incarceration amounts to a voluntary leaving); *Sherman/Bertram, Inc. v. Cal. Dep't of Emp't*, 21 Cal. Rptr. 130, 133 (Dist. Ct. App. 1962) (same). In addition, Kentucky and Michigan have statutes that specifically disqualify persons at fault for their incarceration from receiving unemployment benefits. Ky. Rev. Stat. Ann. § 341.370(6) (LexisNexis 2011); Mich. Comp. Laws § 421.29(1)(f) (2013).

*NRS 612.385's plain language*

When unambiguous, this court gives effect to a statute's plain meaning. *Sonia F.*, 125 Nev. at 499, 215 P.3d at 707. Pursuant to NRS 612.385, a person who is discharged "for misconduct connected with the person's work" is ineligible for unemployment compensation. "Misconduct" is defined as "unlawful, dishonest, or improper behavior." *Misconduct, Black's Law Dictionary* (10th ed. 2014); *see also Bundley*, 122 Nev. at 1445-46, 148 P.3d at 754-55 (determining that misconduct requires deliberate or careless action in "disregard of the employer's interests" such that there is "an element of wrongfulness" (internal quotations omitted)). Clearly, an employee who has been incarcerated because of criminal conduct is being penalized for unlawful and improper behavior, and in committing that behavior, the employee has carelessly disregarded the employer's interest in having an available workforce. *See Bundley*, 122 Nev. at 1445-46, 148 P.3d at 754-55. "Connected" is defined as "[j]oined; united by junction . . . [or] by dependence or relation." *Connected, Black's Law Dictionary* (6th ed. 1990). The misconduct here is connected with work because an employee's unauthorized absence affects an employer's ability to efficiently operate its business. *See Bundley*, 122 Nev. at 1450, 148 P.3d at 757. In effect, the employee who commits a crime has chosen to become unavailable for work. Based on a plain reading of NRS 612.385, an employee who is terminated as a result of missing work due to incarceration after being convicted of a crime is not eligible for unemployment benefits.

We believe that our holding in *Evans* can be construed to align with NRS 612.385's plain meaning. Though not entirely clear, based on the facts as stated in the majority opinion, it appears that Evans applied for unemployment benefits before being adjudicated on the crimes

SUPREME COURT
OF
NEVADA

(O) 1947A

6

charged. *See* 111 Nev. at 1119, 901 P.2d at 156 ("Evans['] failure to be available for work was due to her pretrial incarceration[,] which was predicated on her inability to obtain bail, not her criminal conduct."). Although the cases were not cited in *Evans*, it appears this court intended Nevada jurisprudence to align with other jurisdictions that recognize claimants' limited right to receive unemployment benefits when their incarceration was caused by indigence or criminal charges that were subsequently dropped. *See, e.g., Kaylor v. Dep't of Human Res.*, 108 Cal. Rptr. 267, 268-69, 271 (Ct. App. 1973) (holding that a claimant jailed because of an inability to pay a traffic fine was not disqualified from unemployment benefits); *Holmes v. Review Bd. of Ind. Emp't Sec. Div.*, 451 N.E.2d 83, 88 (Ind. Ct. App. 1983) (holding that a claimant was not disqualified from unemployment benefits because of pretrial incarceration where charges were later dismissed). Admittedly, the *Evans* dissent calls the majority's application into question, *see* 111 Nev. at 1119-20, 901 P.2d at 157 (Steffen, C.J., and Young, J., dissenting), but we believe the opinion's general proposition to be sound. Thus, we take this opportunity to clarify and narrow *Evans'* holding. If an employee seeks benefits because of incarceration caused by an inability to afford bail or pay a fine, and the employee dutifully notifies the employer, there is no disqualifying misconduct. However, when an employee is convicted of a crime, it is the employee's criminal behavior that prevents him or her from returning to work, and the employee is disqualified from receiving unemployment benefits.

*The district court erred*

   The district court misstated the law in its order. The district court proclaimed that employee absenteeism is insufficient as a matter of law to deny unemployment benefits. Implicitly, the district court

concluded that absenteeism because of incarceration is not sufficiently connected with employment to implicate NRS 612.385. In *Bundley*, this court determined that employers have the initial burden of showing misconduct, but a clear pattern of unauthorized absences from work creates a presumption of disqualifying misconduct. 122 Nev. at 1450, 148 P.3d at 757. Once a pattern of unauthorized absenteeism has been established, the burden shifts to the employee to rebut the presumption. *Id.* When the misconduct alleged is an employee's absenteeism caused by incarceration, we conclude that the employee can only rebut the presumption by demonstrating the incarceration is not caused by criminal conduct, but rather by indigence or unsupported charges.

Murphy argues that he dutifully notified Greystone about missing work. The district court did not address the issue of dutiful notification in its order. However, the district court did not err by failing to do so. This argument is irrelevant in light of Murphy pleading guilty to the criminal charges. The dutiful notification requirement is only relevant when the employee is either not subsequently convicted on the criminal charges or demonstrates that indigence caused the incarceration.

However, we conclude that the district court erred in overturning the ESD's decision. Although Murphy stated that he could not afford bail, his absence from work was directly caused by his criminal conduct—he pleaded guilty to the charges against him. Therefore, he is disqualified from receiving benefits under NRS 612.385.

## CONCLUSION

For the foregoing reasons, we conclude that the ESD's decision was not arbitrary or capricious and was supported by substantial evidence. Murphy pleaded guilty to the criminal charges against him and was incarcerated for a year. He was absent from work as a result of his

criminal conduct. The ESD properly concluded that Murphy's situation was distinguishable from *Evans* on the basis of criminal conduct or an "element of wrongfulness." *Bundley*, 122 Nev. at 1446, 148 P.3d at 755. Accordingly, we conclude that the district court abused its discretion in granting Murphy's petition. We reverse the district court's order granting the petition for judicial review.

_____, J.
Hardesty

We concur:

_____, C.J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A