## IN THE SUPREME COURT OF THE STATE OF NEVADA

YOSEF ABATE; NEDEW ABATE; MUDESIR ABDELA; IBRAHIM ABDU; DANIEL ABEBE; WORKO ABOUHAY; SHEMELES ABOYE; EPHRAIN ABRAHAM; SAMSON ABRAHAM; YONAS ABRAHAME; ABRHAM ADAL; HENOK ADMASSU; ZEWDU ADMASSU; SALAH AGAB; MARU ALEM; ABRHAM ALEMANTHE; ARAYA ALEMAYHU; SIRAK ALEMAYOHU; BEIDE ALEMU; MEKONEN AMARE; YEWULSEW AMARE; BEGEDE AMEDE; ASSEFA AMELLO; SOLOMON AMENIE; KASSAYE ARAGE; TEWODEROS ARAYA; ABRAHAM ASFAHA; MESFIN ASFAHA; YORDANOS ASHAGRE; DANIEL ASMELASH; ZELALEM ASSEFA; YESHIFANA AYELE; BASAZIN AYELE; WOYAMA BACHERE; ELIAS BAHLIBI; ZERIHUN BANJAW; HUJAT BEDASO; SOLOMON BEKELE; DELELEGN BALAYNEH; KEREYOU BELKELE; ESTIFANOS BERHE; ADANE BERHE; YEKUNO BEYENE; FEKADU BIBISO; SOLOMON BIRARA; DEGFIE BONGE; GETACHEW BONSA; OSMAN BOUH; SISAY BULLO; JOHN CALO; TEWODROSE CHAKA; BIZUNHE CHALA; YIHENEW DABA; SOLOMON DAMTIE; NIGUSU DEBEBE; BEDASSA DEBELLA; FERMIN DEGUZMAN; BERHANU DEMISSIE; MANAYE DERESE; GIEBREKIDAN DESITA; ENDALKACHEW DESSE;

No. 68849

FILED

APR 2 7 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

AMEHADARI DESTA; SISAY DOLLA; TIMHIRTU EKURAGA; MICHAEL EMERU; DINKU ERO; DEBELA ETICHA; FERANCESCO EUJNIO; BIRHANU FAYISA; SAID FELEKE; FIREHIWOT FELEKE; MOLLA FETEN; SAMUEL FITA; AKLILU FOTOYE; MOHAMMED GABRE; EYOB GADDESA; CARLOS GARCIA; ABAYNEH GASHE; ABRAHA GEBREHIWET; KIBROM GEBREHIWOT; HABTU GEBREMARIAM; SEMERE GEBREMEDIHIN; SISAY GEBREMEDIHIN; TEDROS GEBRENEGUS; ERMIYAS GEBRENIGUS; GULILAT GEBRMARIAM; AREGAI GEBRU; TSEGAYE GEMEDA; DAWIT GEBRMARIAM; MULUGETA GEREMEW; DANIEL GESESSE; MEZEKRE GETACHEW; ASSEFA GEZHAGNE; ABREHET GHEBRAB; DEJENE GIZAW; GIRMA GLAWE; GETACHEW GOBENA; AYANAW GOSHU; BINIAM GULBET; YARED HABTEMICHAEL; DANIEL HABTEWOLD; TEKLU HAGOES; LIKE HAILE; TEWOEROS HAILE; MILION HAILEMARIAM; DAWIT HAILEYESUS; ALEMZEWED HAILU; DAWIT HAILU; GOITOM HAILU; AMAN HASSEN-MUHAMEDHAGOS; TSEGAY HUNDE; TADESSE HUNDIE; MOHAMED HUSSEIN; MOHAMED IBRAHIM; ALEMAYEHU JEMBER; GETACHEW KASA; DEMISSEW KASSAY; TAMRAT KEBEDE; DANIEL KEBEDE; ERMAIS KEBEDE; ZENEGNAW KEBEDE; ASHAGERE KEBTA; KASSA KEFAYELEW; KALEB

SUPREME COURT
OF
NEVADA

(O) 1947A

KEFYALEW; ASMARE KERALA; ALEX
KIDANE; AMANUEL KIDANE;
DEREJE KIDANE; SAMSON KIDANE;
YOHANNES KILTU; SISAY KURATE;
YOHANNES LEBASSI; ABEBE LICHE;
NEBEYU MAHARI; SHIMELIS
MAMMO; TESFEY MANDEFRO;
TESHALE MANDEFRO; EFRAM
MASEBO; DAWIT MEASHO; TAGEL
MEKONEN; ASHAGRE MEKONEN;
SHIMELS MEKONNEN; HANA
MEKONNEN; ABEBE MELESSE;
ABABO MENEWABE; HERUY
MENGESTU; KEBEBEW MENGISTU;
MATHEWOS MENGISTU; MESFIN
MENGISTU; ELIAS MENTALEYA;
YOHANNES MERSHA; ALEMNEH
MESHESHA; HENOK METEKIA;
YEMANE MIHRETU; MICHAEL
MISGENA; MIKE MOHAMMED;
NUREDINE MUSTEFA; WENDWESEN
NAKE; AREGEDU NECHO; MESERET
NEGUESSE; TEWODROS NIGATU;
STEPHEN NIGRELLI; YUSUF NURI;
HASSEN NURO; YONATHAN OBSA;
SEBHATU OGBAGABER; JEMILA
OMER; RONALD PEREZ; MELAKU
SEBLEGA; TAMERAT SEBSIBE;
MULATU SEID; AHMED SEID;
ABDELKADR SEID; BINIAN SEIFU;
BINIAM SEMERE; TESFAYE SHAI;
AMOGNH SHEBESHE; MICHAEL
SHIFA; TESFAYE SHIFERAW; MOGES
SHIFERAW; TSEGAYE SINIGIL;
GIRMAY SOLOMON; RAHEL
SOLOMON; AYALEW TADESSE;
FIKRE TADESSE; ASHENAFI
TADESSI; SOLOMON TAREKE; ADDIS
TEDALA; MEKBEB TEDLA; BELAY
TEFESEWORK; ABENET TEFFERA;
ASCHALEW TEGEGN; YIHEYES

SUPREME COURT
OF
NEVADA

(O) 1947A

3

TEGEGNE; ZERABRUCK TEGENE; MIHERET TESEGAY; JOSEPH TESHALE; AMEHA TESHOME; TADIOS TESSEMA; BINIAM TEWELDE; SAMSON TEWELDE; SOLOMON TSEGAY; SOLOMON WAKENE; TESHOME WARI; YONAS WELDEMARIAM; CHERINET WERDOFA; BRUK WERDOFA; ANTENEH WOLDE; ADAM WOLDEMARIAM; GEBREKIROS WOLDEMARIYAM; TSEGAYE WOLDEMICAHEL; HIRUT WOLDETSADIK; NETSANET WOLDEYES; SOLOMON WOLDEYES; MOLAYE WOLDEYESUS; YOHANNES WOLDU; ERMIAS WONDE; SOLOMON WONDFRASH; WONDEWOSSEN WORDOFA; ABRAHAM WORKE; GHIDEY WORKINEH; TEBEBE WORKNEH; TEFERI WORKNEH; KIDUS WORKU; WOINSHET WORKU; GEZAHEGN WORKU; BEREKET WUBETU; TEODROS WUBETU; EKINDER WUBSHET; GEMET YILMA; MEKONNEN YIMER; ZELALEM YIMER; ASKALE YOHANNES; BINIAM YOHANNES; NAJIB YOMIS; TEWODROS YOSEPH; ANTENEH ZELEKE; MULUGETA ZELEKE; TADELE ZELEKE; ABEL ZEWDE; AND DEMELAFH ZURIA, AS INDIVIDUALS, Appellants,
vs.
ACE CAB, INC.; A NLV CAB CO.; UNION CAB CO.; VEGAS-WESTERN CAB, INC.; VIRGIN VALLEY CAB COMPANY, INC.; FRIAS TRANSPORTATION MANAGEMENT; EMPLOYMENT SECURITY DIVISION OF THE STATE OF NEVADA

DEPARTMENT OF EMPLOYMENT,
TRAINING AND REHABILITATION;
AND RENEE OLSON, IN HER
CAPACITY AS ADMINISTRATOR OF
THE EMPLOYMENT SECURITY
DIVISION,
Respondents.

## ORDER OF AFFIRMANCE

This is an appeal from a district court order resolving a petition for judicial review and a cross-petition for judicial review in an unemployment benefits matter. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

Respondents Ace Cab, Inc., A NLV Cab Co., Union Cab Co., Vegas-Western Cab, Inc., and Virgin Valley Cab Company, Inc. are taxicab companies that operate in southern Nevada. Respondent Frias Transportation Management owns and operates these companies. Appellants are 240 former taxicab drivers who were terminated after participating in a wildcat strike to protest a collective bargaining agreement (CBA) signed by their collective bargaining representative and respondent companies.

Following their termination, the drivers applied for unemployment benefits with respondent Employment Security Division (ESD). ESD denied appellants' claims pursuant to NRS 612.395, which disqualifies an individual from receiving unemployment benefits if his or her unemployment is "due to a labor dispute in active progress." The Board of Review affirmed ESD's denial of benefits, but modified the reason for denial from NRS 612.395 to NRS 612.385, which disqualifies an individual from receiving unemployment benefits if he or she was discharged for misconduct connected with the work. Subsequently, the drivers petitioned

for judicial review, arguing that they had not engaged in misconduct under NRS 612.385. Respondents cross-petitioned, arguing that the drivers were ineligible for benefits pursuant to both NRS 612.395 and NRS 612.385. The district court denied the drivers' petition for judicial review and granted respondents' cross petition, holding that the drivers were disqualified from receiving unemployment benefits pursuant to both NRS 612.395 and NRS 612.385. The drivers now appeal the district court's order, arguing they are not disqualified from receiving unemployment benefits under either NRS 612.395 or NRS 612.385.

"When reviewing an administrative unemployment compensation decision, this court, like the district court, examines the evidence in the administrative record to ascertain whether the Board acted arbitrarily or capriciously, thereby abusing its discretion." *Clark Cty. Sch. Dist. v. Bundley*, 122 Nev. 1440, 1444, 148 P.3d 750, 754 (2006). The Board's factual determinations are entitled to deference if they are supported by substantial evidence, "which is evidence that a reasonable mind could find adequately upholds a conclusion." *Id.* at 1445, 148 P.3d at 754. This court "review[s] de novo any questions purely of law." *Id.*

*The district court erroneously concluded that the drivers are disqualified for benefits under NRS 612.395*

We first consider whether an individual may simultaneously be disqualified from receiving unemployment benefits under both NRS 612.395 and NRS 612.385. We conclude that the provisions are mutually exclusive as a matter of law and that NRS 612.395 ceased to apply once the drivers were terminated.

NRS 612.395(1) disqualifies a person from receiving unemployment benefits when his or her unemployment is "due to" a labor

Supreme Court
OF
Nevada

(O) 1947A

dispute in active progress.[1] The district court determined the drivers were disqualified under NRS 612.395 because their participation in the strike was the "cause" of their unemployment. We reject the district court's broad interpretation of causation.

In *Four Queens, Inc. v. Board of Review of Nevada Employment Security Department*, this court rejected a "but for" causation test and concluded that there may be circumstances where "the causal connection between the unemployment and the labor dispute is broken and eligibility [for benefits] therefore restored." 105 Nev. 53, 57-58, 769 P.2d 49, 51-52 (1989). In light of our holding in *Four Queens*, we conclude that "the causal connection between the unemployment and the labor dispute is broken" where the employer-employee relationship is severed by the employer's unequivocal termination of the employee, and therefore the unemployment is no longer "due to" a labor dispute for purposes of NRS 612.395. *Id.* Here, the Board of Review found, and the parties do not dispute, that the drivers were terminated. The employer-employee relationship was therefore severed, and the labor dispute provision ceased to apply once the drivers were terminated. We therefore conclude that the district court erred in finding that the drivers were disqualified pursuant to both NRS 612.395 and NRS 612.385 simultaneously.

---

[1]A person is "'unemployed' in any week during which [he or she] performs no services and with respect to which no remuneration is payable." NRS 612.185(1). Therefore, an individual can be "unemployed" for purposes of Nevada's unemployment compensation legislation while he or she is on strike, even though an employer-employee relationship still exists. *See Landis v. Am. Potash & Chem. Corp.*, 78 Nev. 424, 431, 375 P.2d 402, 406 (1962) (ruling that "the employer-employee relationship is a *status* which was not destroyed by the strike").

*The Board's conclusion that the drivers engaged in misconduct pursuant to NRS 612.385 is supported by substantial evidence*

We next consider whether the drivers are disqualified from receiving unemployment benefits under NRS 612.385. On appeal, the drivers argue that they did not engage in disqualifying misconduct under NRS 612.385. We disagree and conclude that the Board's decision is supported by substantial evidence and therefore the district court properly denied the drivers' petition.

Pursuant to NRS 612.385, "[a] person is ineligible for benefits for the week in which the person has filed a claim for benefits, if he or she was discharged from his or her last or next to last employment for misconduct connected with the person's work." Disqualifying misconduct occurs "when an employee deliberately and unjustifiably violates or disregards her employer's reasonable policy or standard, or otherwise acts in such a careless or negligent manner as to show a substantial disregard of the employer's interests or the employee's duties and obligations to her employer." *Bundley*, 122 Nev. at 1445-46, 148 P.3d at 754-55 (internal quotation marks omitted); *see also Barnum v. Williams*, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968) (stating that an individual engages in misconduct if he or she deliberately disregards "standards of behavior which his employer has the right to expect"). Disqualifying misconduct must also "involve an element of wrongfulness." *Bundley*, 122 Nev. at 1446, 148 P.3d at 755 (internal quotation marks omitted).

Here, the Appeals Referee and the Board of Review found that disqualifying misconduct existed because the drivers "demonstrated a deliberate disregard of reasonable standards of conduct" and that such "conduct contained the element of wrongfulness" necessary for disqualification. After reviewing the record, we conclude that substantial

evidence supports the Board's findings. The drivers do not dispute that they participated in a wildcat strike that involved leaving work early, failing to report to work as scheduled, and picketing the respondents' facility. *See Davis v. Review Bd. of Ind. Emp't Sec. Div.*, 300 N.E.2d 690, 692 (Ind. Ct. App. 1973) (stating the employees' "concessions of record as to the factuality of and reasons for the walk-out, effectively preclude a successful contention that 'misconduct' was not proved"). Thus, we conclude the drivers' conduct demonstrated a substantial enough disregard for their employers' interests to include an element of wrongfulness. *See Bundley*, 122 Nev. at 1445-46, 148 P.3d at 754-55. We therefore conclude that the Board's decision was not arbitrary, capricious, or an abuse of discretion and the drivers are disqualified from receiving unemployment benefits pursuant to NRS 612.385. Accordingly, we affirm the district court's denial of the drivers' petition for judicial review and

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Kenneth C. Cory, District Judge
Kathleen M. Paustian, Settlement Judge
The Law Office of Dan M. Winder, P.C.
Jackson Lewis P.C.
State of Nevada/DETR
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., with whom, CHERRY and HARDESTY, JJ., agree, dissenting:

I agree with the majority's conclusion that NRS 612.395 ceased to apply once the drivers were terminated. However, I disagree with the majority's conclusion that the striking drivers engaged in "misconduct" pursuant to NRS 612.385.

NRS 612.385 renders a person ineligible to receive unemployment benefits "if he or she was discharged . . . for misconduct connected with the person's work." However, under this court's precedent, not all employee misconduct resulting in termination implicates NRS 612.385. *Clark Cty. Sch. Dist. v. Bundley*, 122 Nev. 1440, 1446, 148 P.3d 750, 755 (2006). Rather, to satisfy NRS 612.385's definition of "misconduct," the employee's conduct must "involve an element of wrongfulness." *Id.* (internal quotation marks omitted).

In this case, the drivers participated in a wildcat strike to express their dissatisfaction with a CBA which, among other things, prohibited them from striking. As the majority notes, the strikers' conduct consisted of "leaving work early, failing to report to work as scheduled, and picketing the respondents' facility." That is precisely the type of conduct to be expected during a peaceful strike. Therefore, in holding that the strikers' "conduct demonstrated a substantial enough disregard for their employers' interests to include an element of wrongfulness," the majority in effect holds that participation in a wildcat strike necessarily "involve[s] an element of

 

wrongfulness." *Bundley*, 122 Nev. at 1446, 148 P.3d at 755 (internal quotation marks omitted).

The problem with the majority's position is that it contravenes Nevada's policy of maintaining "'state neutrality' in labor disputes." *Four Queens, Inc. v. Bd. of Review of Nev. Emp't Sec. Dep't*, 105 Nev. 53, 59, 769 P.2d 49, 52 (1989); *see also Airport Casino, Inc. v. Jones*, 103 Nev. 387, 394, 741 P.2d 814, 819 (1987) (recognizing "this state's policy of maintaining strict neutrality in cases of industrial strife"). The majority implicitly acknowledges that the wildcat strike constituted a "labor dispute." Indeed, we have never held that a strike must be authorized by a union in order for such conduct to constitute a labor dispute under NRS 612.395. In then concluding that the strikers committed misconduct by participating, the majority in effect ascribes fault to workers for joining a labor dispute. That position is untenable because "'fault' or 'misconduct' is not a meaningful concept to apply to a work stoppage which results when the parties, in negotiating a collective bargaining agreement, cannot reach an understanding as to wages, hours or working conditions." *Claim of Heitzenrater*, 224 N.E.2d 72, 75 (N.Y. 1966) (adding, "If there be any 'fault,' it is often attributable to both parties."); *see also Inter-Island Resorts, Ltd. v. Akahane*, 377 P.2d 715, 724 (Haw. 1962) ("[T]he unemployment compensation fund should not be used for the purpose of financing a labor dispute any more than it should be withheld for the purpose of enabling an employer to break a strike."). Thus, I believe that mere participation in a wildcat strike does not satisfy NRS 612.385's definition of "misconduct."

This is not to say that an employee's participation in a wildcat strike immunizes him from NRS 612.385's consequences for any misconduct during the labor dispute. "If employees on strike commit acts of violence or

sabotage, they may, of course, be found guilty of misconduct, justifying their discharge and disqualification from receiving unemployment benefits." *Heitzenrater*, 224 N.E.2d at 76. Here, however, there is no indication that the strikers committed such wrongful acts.

For the foregoing reasons, I do not believe that the drivers' participation in the strike renders them ineligible for benefits under NRS 612.385. Therefore, I dissent.

_____, J.
Stiglich

We concur:

_____, J.
Cherry

_____, J.
Hardesty

SUPREME COURT
OF
NEVADA

(O) 1947A